The appellant, Robert Wayne Dockery, appeals his conviction of sexual abuse in the first degree and his subsequent sentence of five years' imprisonment, which was ordered to be split with one year's imprisonment and three years on probation. Dockery appeals his conviction, raising four issues for our review. Because one of Dockery's issues warrants reversal, the other issues need not be addressed.
Dockery contends that the trial court committed reversible error by allowing the prosecution to question one of the defense's witnesses regarding Dockery's prior conviction for sexual abuse in the second degree. Dockery filed a motion in limine at trial requesting that the state be prevented from mentioning his prior conviction. The trial court granted Dockery's motion in limine stating: "Well, I would grant the motion in limine except for that circumstance where the defendant testified. I believe that his would be a crime involving moral turpitude, as stated." During the argument on this motion, the state asserted that it did not intend to introduce this evidence except in response to an action by the defense that would make the evidence admissible and further stated that if it intended to use the evidence at all, it would first call for a sidebar conference. *Page 220 
The victim in this case is an eight-year-old boy, who would have been six at the time the alleged events took place. R.B. was allegedly molested by Dockery in the residence of the Stasco family. Dockery was a friend of Mr. Stasco, and Mrs. Stasco and R.B.'s mother were good friends. At the time of the alleged offenses, R.B. and his mother were living with the Stasco family. R.B. testified that Dockery fondled his penis while he was staying at the Stasco residence, once when his mother and Mrs. Stasco had left him with Dockery for a short period while they went shopping and another time when Dockery tied him up with a rope. In regard to this latter occasion, R.B. testified that he was unable to free himself from the rope. However, further testimony indicated that, when he was interviewed by a counselor, he indicated that he was able to free himself from the rope.
The defense called Mrs. Stasco to testify. During direct examination, she testified that at no time while R.B. and his mother were staying with the Stasco family was R.B. left at home with Dockery. Mrs. Stasco further testified that she never leaves her two children with anyone and that at no time were her children or R.B. left at home with Dockery. During the state's cross-examination, the following occurred:
 "A. I knew it couldn't have happened because [R.B.] wasn't alone with [Dockery].
"Q. And he's friends with your husband?
"A Yes.
 "Q. Is there some reason that you would never leave your children with this man?
 "A. No. Only besides I don't leave them with anybody. But if I did, I'd trust him with them.
"Q. Why would you trust him with them?
 "A. Because he ain't never done nothing that I know of to a kid. He is around a lot of kids, and . . . to my knowledge I don't know nothing about him ever messing with one.
"Q. To your knowledge?
"A. Yes.
 "Q. Now, isn't it true that you have some knowledge of him messing with children?
 "A. No. That's what I'm saying, I don't know nothing about him ever doing it.
 "Q. Well, that's not true, is it? You have knowledge of him messing with children, don't you?
"A. No.
"Q. You have no knowledge?
 "A. Not as far as touching — well, they said this, but I don't know nothing —
 "MR. BURTON: I object to this line of questioning, Your Honor. It's improper.
 "THE COURT: Well, I will sustain the objection at this point.
 "Q. Isn't it true that you're aware that he was convicted of sexual abuse —
"MR. BURTON: Your Honor, I object.
"Q. — in February, March of '92?
"THE COURT: Wait a minute.
"MR. BURTON: Your Honor, I object."
The state had failed to request a sidebar before injecting the collateral offense into the trial as it had agreed. However, at this point, the trial court excused the jury, and after hearing arguments, and subsequently overruling Dockery's request for a mistrial, called the jury back and allowed the prosecution to ask Mrs. Stasco whether she was aware that Dockery had been convicted of sexual abuse in the second degree on March 23, 1992. Mrs. Stasco answered in the affirmative. The trial court allowed the prosecution to ask this question stating: "I believe at this point that it is within the realm of proper examination based on her testimony at this point." Furthermore, over objection, the prosecution was allowed to refer during closing arguments to Dockery's prior conviction.
In addressing Dockery's contention that the trial court allowed the prosecution to improperly cross-examine Mrs. Stasco by its mention of Dockery's prior sexual abuse conviction, we begin with the observation that the state's eliciting evidence of Dockery's prior conviction was nothing more than its attempt to show Dockery's bad character and propensity to commit the crime of sexual abuse. However, the state cannot initiate the proving of the defendant's bad character to prove his guilt. "In a criminal prosecution, it is generally agreed that the state is not allowed to introduce evidence of the accused's *Page 221 
bad character until the accused has first entered evidence of his good character." C. Gamble, McElroy's Alabama Evidence § 27.01(1) (4th ed. 1991). See also id. at § 27.02(1). Contrary to the state's assertion, at no time did Dockery put his character into issue. Rather, Mrs. Stasco testified on direct examination only that the children were never left with Dockery. This questioning on direct examination did not involve character, but dealt solely with Dockery's defense that he could not have committed the offense. It was not until the prosecution cross-examined Mrs. Stasco that Dockery's character came into issue. Moreover, while the defense did elicit the testimony that R.B. had never been left with Dockery, we consider that the issue of why no child was left in Dockery's care was irrelevant. Even assuming, arguendo, that his conviction was relevant to the reason why Dockery never looked after the children, its prejudicial effect far outweighed its value of relevancy. See Spellman v. State, 473 So.2d 618
(Ala.Cr.App. 1985).
We find that the trial court erred in allowing the prosecution to ask the defense witness on cross-examination if she was aware that the appellant had been previously convicted of the crime of sexual abuse. The evidence of the collateral crime was not in any way connected with the issues involved in the case, was irrelevant, and prejudiced Dockery before the jury. "The examination of a witness both in chief and on cross-examination must be confined to matters relevant to the issue. While a wide latitude is allowed on cross-examinations, facts irrelevant and immaterial cannot become the matter of the examination." Patterson v. State, 21 Ala. App. 464-65,109 So. 375-76, cert. denied, 215 Ala. 699, 109 So. 922 (1926).
The state contends that even if the admission of such evidence was error, it was harmless error. We can not agree. In the instant case, the state's evidence was based primarily on the testimony of an eight-year-old boy who changed his testimony several times. We cannot agree that the error complained of did not probably injuriously affect a substantial right of the appellant. We think it did. Accordingly, the judgment is due to be, and it is hereby, reversed and the case remanded.
REVERSED AND REMANDED.
TAYLOR and McMILLAN, JJ., concur.
BOWEN, P.J., dissents with opinion.
MONTIEL, J., dissents without opinion.