COBB, Judge.
On August 30, 2000, Stancy Derrell Long was convicted of murder, in violation of § 13A-6-2, Ala.Code 1975. On December 8, 2000, Long was sentenced to 15 years in prison. On January 16, 2001, the *1069 State filed a motion to correct the sentence to comply with the mandatory minimum sentence of 20 years in prison for committing a Class A felony with a firearm, pursuant to § 13A-5-6(a)(4), Ala.Code 1975. On February 22, 2001, the trial court reconsidered this sentence and sentenced Long to 20 years in prison; that sentence was split, and he was ordered to serve 5 years in prison and 5 years on probation. Long was also ordered to pay restitution, court costs, fees, and $50 to the Alabama Crime Victims Compensation Fund. Long filed a motion for a judgment of acquittal, or, in the alternative, a motion for a new trial. On March 27, 2001, the trial court held a hearing on Long’s posttrial motions; it denied the motions on April 3, 2001, with a written order. This appeal followed.
At trial, the evidence revealed that Joe Sanders, the victim, attended a high school football game in Greensboro. While at the game, Sanders became involved in an altercation with Morris Lawson and Demon-tae Edwards. Lawson and Long are cousins. Lawson and Edwards testified that Sanders called them “walking dead men.” (R. 265, 267, 322.) Conflicting testimony was presented as to whether any punches were thrown during this altercation, and there was testimony that Sanders brandished a gun during the argument. Lawson and Sanders were escorted from the stadium by the police.
Later that evening, Lawson, Edwards, and Sanders argued in a grocery store parking lot. During this confrontation, Sanders pulled a pistol and, according to Lawson, stated: “Y’all don’t want none of this. You’re too young, too small for this.” (R. 323.) Lawson testified that Sanders put his gun away,- and walked over to him and Edwards, shook their hands, and said, “ ‘Let’s squash this. Let’s chill,’ like it was over with.” (R. 324.) Additional witnesses testified that this confrontation ended peacefully.
The third confrontation between the parties occurred later that evening at Club 14, in Sawyerville. The evidence revealed that Long was aware of the earlier altercations. Long was aware that Sanders was at the club. Lawson communicated to Long that he was going to confront Sanders at the club. An altercation ensued, and Long fatally shot Sanders before fleeing. The testimony at trial indicated that Sanders initiated the final confrontation with Lawson, but there was conflicting evidence as to whether he pulled his pistol before or after he was fatally shot by Long.
On appeal, Long argues that the trial court erroneously admitted evidence of his character. Specifically, Long argues that, during the State’s case-in-chief the trial judge improperly allowed the sheriff to testify about Long’s character before his character had been put at issue. We agree.
During the State’s case-in-chief, the sheriff testified, over the prosecutor’s objection, on cross-examination about the victim’s reputation. On re-direct, the prosecutor asked the sheriff about Long’s reputation for violence. Long objected, but the trial judge allowed the testimony, stating:
“Since I allowed you to bring your self-defense evidence in, at this juncture, I’m going to allow him to question the sheriff. I know he could come back once the defendant takes the stand, and bring the sheriff back. But since you’ve raised the self-defense as I allowed you to do then, I’m going to allow him to ask the sheriff about [Long’s] reputation.”
(R.- 167-68.) The sheriff testified that Long had a reputation for being violent.
*1070 Rule 404(a), Ala. R. Evid., states, in relevant part:
“Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
“(1) Character of Accused. Evidence of character offered by an accused, or by the prosecution to rebut the same.”
Had Long placed his character or reputation for peacefulness at issue, only then would the State have been allowed to call the sheriff to offer rebuttal testimony, and not before.
“The prosecution generally may not take the initiative, in its case in chief, to introduce any kind of evidence as to the accused’s bad character in order to show conformity with that character on the occasion of the charged crime. Good or bad character of the accused is never an issue which the state may offer evidence to prove guilt unless the accused has first chosen to make it an issue.”
C. Gamble, McElroy’s Alabama Evidence § 27.02(1) (5th ed. 1996)(footnote omitted). Quoted in part in Ex parte Woodall, 730 So.2d 652, 661 (Ala.1998).
“ ‘[T]he state cannot initiate the proving of the defendant’s bad character to prove his guilt. “In a criminal prosecution, it is generally agreed that the state is not allowed to introduce evidence of the accused’s bad character until the accused has first entered evidence of his good character.” ’ Dockery v. State, 659 So.2d 219, 220-21 (Ala.Cr.App.1994) (citation omitted). See also Ala. R. Evid. 404.”
Ex parte Woodall, 730 So.2d at 661 (footnote omitted).
“The prosecution may not introduce evidence of the accused’s bad character until the defense first elicits evidence of the accused’s good character. In keeping with the spirit of this rule, the mere fact that the defense has introduced evidence of the victim’s bad character does not entitle the prosecution to introduce evidence of the accused’s bad character.”
C. Gamble, McElroy’s Alabama Evidence § 27.02(8) (5th ed. 1996). See also Steams v. State, 266 Ala. 295, 96 So.2d 306 (1957).
In Ex parte Woodall, the State improperly cross-examined Woodall about his propensity for violence, even though he had not placed his character at issue. The prosecutor questioned Woodall about various altercations he had been involved in, and then called Woodall’s estranged son to testify about the defendant’s behavior. The Alabama Supreme Court found that the State had improperly introduced evidence of Woodall’s character where he had not first voluntarily placed his character in issue.
Here, the sheriff testified on direct examination during the State’s case-in-chief. Long had not placed his character at issue. Thus, the trial court’s decision to allow the State to question the sheriff about Long’s reputation was in error.
The State, in its brief, concedes that the testimony was improper at the time that it was admitted, but contends that the error was cured when Long submitted evidence of his peacefulness.
“ ‘It is of no “consequence that this testimony may have been incompetent at the time it was offered, if it was subsequently rendered [competent].” Hanners v. State, 147 Ala. 27, 41 So. 973, 975 (1906). “[W]hile, ordinarily, in the introduction of evidence, it should be competent at the time when offered, still, if rendered competent by the subsequent introduction of other evidence, this is sufficient to correct and cure any error that might otherwise have existed in the admission *1071 of the evidence first offered.” Collins v. State, 138 Ala. 57, 34 So. 993, 994 (1903).’ ”
Smith v. State [Ms. CR-97-1258, December 22, 2000] — So.2d -, - (Ala. Crim.App.2000) (quoting Rowe v. State, 522 So.2d 328, 330 (Ala.Crim.App.1988) (alteration in Smith)).
Smith is distinguishable from the present case, in that the testimony in Smith concerned the defendant’s prior convictions, which became admissible once the defendant took the stand, and not character or reputation evidence. The mere fact that Long testified did not automatically place his character at issue. Rather, he must voluntarily place his character at issue. See, e.g., Ex parte Woodall, 730 So.2d at 662 (defendant did not voluntarily place his character in issue merely by responding to prosecutor’s questions on cross-examination without first introducing evidence of his good character).
We find no caselaw that specifically states that improperly introduced character evidence may be rendered competent by subsequently introduced evidence.
However, assuming without deciding that such an error may be cured by the subsequent admission of competent testimony, we are not convinced that Long ever offered testimony of his character or reputation for peacefulness.
Long testified that his “gang” was more of a group of friends and relatives who just gathered socially, drank, and smoked marijuana. They were not a criminal organization like the word “gang” implies. Long testified that Sanders had confronted him several times before the incident at issue, repeatedly calling him “bitch” and staring at him. Long stated that this did not make him want to kill Sanders. Long testified that he told Lawson to stay away from Sanders after Lawson told him of the confrontations at the football game and the grocery store parking lot. “I wasn’t trying to really hear it. I was just telling [Lawson], man, just stay around me. Just stay from around him, you know what I’m saying? I didn’t want nothing.” (R. 362.) Long testified that he was trying to leave peacefully when the altercation began at the club. Long stated that he did not usually carry a gun, but that “I was just carrying it because one of [my] cousins had told me to watch myself. Joe Sanders was out to get me.” (R. 366.)
We do not believe that these statements by Long placed his character at issue. In Ex parte Woodall, 730 So.2d at 662, the Alabama Supreme Court stated:
“[I]t might be claimed that the defendant had [voluntarily placed his character in issue] by giving direct testimony in which he indicated that he ‘would’ not ‘under any circumstances’ ‘ever’ have hired someone to kill his mother or have told Pope that it was ‘okay’ to kill her. However, we do not believe that such ambiguous statements, which appear to have been made in the context of attempting to show that the defendant had a close and loving relationship with his mother, and, hence, no motive to kill her, can be fairly construed as an unequivocal assertion of good character that would justify cross-examination about prior violence against others generally.”
730 So.2d at 662.
We cannot say that Long’s testimony ever placed at issue his character, or his reputation in the community for peacefulness. Rather, our reading of Long’s testimony is that he was merely recounting events material to the charge at issue, and not of his character or reputation. See, e.g., Thompson v. State, 376 So.2d 766 (Ala.l979)(it was reversible error to allow prosecution to introduce evidence regarding defendant’s reputation for peace and quiet where defendant had testified but *1072 had not put that aspect of his character in issue).
For the above-stated reasons, Long’s conviction must be reversed. The trial court’s judgment is reversed and this cause is remanded with directions for the trial court to vacate Long’s conviction, and for that court to conduct a new trial. Our reversing the judgment of the trial court on this issue pretermits any discussion of the other issues raised by Long on appeal.
REVERSED AND REMANDED.
McMILLAN, P.J., and SHAW, J., concur. BASCHAB, J., concurs in the result. WISE, J., dissents.