The appellant, Joseph H. Perkins, was indicted on December 8, 1995, in a three-count indictment, by the Montgomery County grand jury. Count I charged him with committing the crime of theft of property in the *Page 890 
first degree, a violation of § 13A-8-3, Code of Alabama 1975, alleging that he knowingly obtained control over $231,915.50, the property of Norment Industries, W.S.A., Inc., a corporation (hereinafter "corporation"), with the intent to deprive the corporation of that property. Count II charged him with committing the crime of conspiracy to commit theft in the first degree, a violation of § 13A-4-3, alleging that he conspired with Edward Tumlinson and Joseph Bryant to falsely seek payment of money from the corporation for work that was not done, and/or for work done but for which the corporation was not required to pay. Count III charged him with knowingly attempting to commit the crime of theft of property in the first degree, a violation of § 13A-4-2, alleging that he attempted to obtain control over $231,915.50, the property of the corporation, with intent to deprive it of that property. A jury found him guilty as charged on all three counts, and the trial court sentenced him to five years' imprisonment on each count. The sentences were split, and the appellant was ordered to serve two years' imprisonment with the balance being suspended on condition that he serve five years' supervised probation in each case. The sentences were to run concurrently.
The trial court stated at the sentencing hearing that it would prescribe the conditions of probation when the appellant completed his two years' confinement. It further ordered him to pay $250 to the victim's compensation fund, court costs, and restitution. The trial court further stated that upon the appellant's release from confinement, it would order him to pay restitution in the amount of one-third of the loss to the corporation, and would prescribe the method of payment. It stated that a restitution order would be filed at some future time. The prosecuting attorney suggested that the amount of restitution would be $71,526.26; however, no calculation of the amount was made by the trial court, and to date no order has been filed setting an amount.
It appears to us from the record that the trial court has retained jurisdiction of the matter of restitution and intends to determine the amount and method of payment when the appellant completes his two years' confinement. It also appears to us that the parties may not agree as to the amount of restitution that should be ordered and, therefore, in the interests of judicial economy and avoiding future controversy, before a specific amount is determined and ordered, the trial court should hold a hearing at which the parties will be afforded an opportunity to present evidence and be heard on the matter.
The state's evidence tended to show that Edward Tumlinson, Joseph Bryant, and the appellant entered into a plan to steal money from the corporation by billing it for work that they did not perform or for work performed for which the corporation was not supposed to pay; that they illegally obtained approximately $231,915.50 from the corporation by this plan; and that they divided the stolen funds. The plan was as follows: Tumlinson, who was an employee of the corporation and who had authority to approve invoices of subcontractors for payment, would approve for payment invoices periodically submitted by the appellant, who was acting as a subcontractor, knowing that the invoices were padded or inflated and, in some cases, completely fabricated. When the corporation paid those invoices, the appellant would split the illegally obtained funds with Tumlinson and Bryant, who was the appellant's co-conspirator and employee. State witness William Lloyd Strickland, a certified public accountant employed by the corporation to examine the financial records of the corporation and of the appellant to trace the funds, testified that from his examination of the records he concluded that the appellant had received $58,443.93, Tumlinson $80,247.00, and Bryant $45,983.09 from the scheme.
Tumlinson and Bryant were indicted for the same offenses as the appellant. By agreement with the state, they pleaded guilty to theft of property in the first degree, agreed to pay restitution, and agreed to testify for the state against the appellant. The attempt and conspiracy counts of their indictments were nol-prossed, and they were authorized by the trial court to apply for admission into a pretrial diversion program. See §§ 12-23-1 through -19. Bryant was not called as a witness in the present trial by *Page 891 
either party; however, Tumlinson testified for the state. He described the scheme and identified numerous invoices that the corporation had paid where the work represented by the invoice was either partially done or not done at all. He identified invoices involving substantial amounts of money that were, according to him, "totally fictitious" or were the result of "double billing." He implicated the appellant and Bryant in the illegal scheme, testified that all three of them were "in it together" from the beginning, and characterized the payments he received from the appellant as "kickbacks."
The appellant testified in his own behalf and admitted that over the period that he was doing subcontracting work for the corporation he had given Tumlinson $78,000. He stated that the first $3,800 of that amount was a "finder's fee" and that the balance was loans. He testified that he and Bryant made the "loans" to Tumlinson to help Tumlinson because of alcohol and domestic problems Tumlinson was having and because of "pressure" from Tumlinson. He further testified that there was no understanding as to how and when the "loans" would be repaid. He denied all charges, and stated that he had no intent to steal money from the corporation.
The appellant appeals his convictions, raising six issues.
 I.
First, the appellant contends that the trial court committed reversible error in overruling his motions for judgments of acquittal and his motion for a new trial as to the convictions of attempted theft and conspiracy to commit theft.[1] He argues that he could not be legally convicted of these offenses and also convicted of theft because, he says, they, along with the conviction for theft, were based upon and arose out of the same facts or one course of conduct. He relies upon § 13A-4-5(b) and (c) to support his contention, which provide as follows:
 "(b) A person may not be convicted on the basis of the same course of conduct of both the actual commission of an offense and:
"(1) An attempt to commit the offense; or
"(2) Criminal solicitation of the offense; or
"(3) Criminal conspiracy of the offense.
 "(c) A person may not be convicted of more than one of the offenses defined in Sections § 13A-4-1
[criminal solicitation], 13A-4-2 [attempt], and 13A-4-3 [conspiracy] for a single course of conduct designed to commit or to cause the commission of the same crime."
See also § 13A-1-8(b)(2) ("When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if . . . [o]ne offense consists only of a conspiracy or other form of preparation to commit the other.").
The record shows that to prove the charge of theft of property in the first degree, the state relied on the evidence of the completed transactions between the appellant and the corporation that occurred before the termination of his contractual relationship with the corporation. It also shows that to prove an attempted theft, the state relied on the evidence of uncompleted transactions that occurred after the appellant's relationship with the corporation was terminated. After the relationship was terminated, the appellant submitted several invoices seeking payment for allegedly work done on the "Atlanta job." These invoices were not paid. The state's theory of the evidence establishing both a theft and an attempted theft was known to the appellant at the time of, and discussed in, a pretrial conference. In the conference the trial court stated, "I will give the instruction on the attempted theft; it deals with the alleged invoices after his contract had terminated." The appellant clearly understood that the trial court would charge the jury on attempted theft based on the invoices he submitted on the "Atlanta job" *Page 892 
after his termination and which were not paid. Under the facts here, the trial court correctly instructed the jury that the theft and attempted theft charges were separate offenses and that the appellant could be found guilty of neither, either, or both, depending upon the jury's interpretation of the evidence. The appellant did not object to the court's charge in reference to the attempted theft instruction, and agreed to the submission of the attempt count to the jury. We find that these two offenses were properly submitted to the jury and that the state presented sufficient evidence from which the jury could find the appellant guilty beyond a reasonable doubt on both the theft and attempted theft counts. As to this issue, the appellant's position on appeal is inconsistent with his position at trial; at trial he agreed to the submission of the attempt count to the jury as a separate offense based on evidence different from the evidence allegedly establishing the theft charge. Not having objected to the trial court's interpretation of the two offenses as resting upon different evidence, he cannot now assert that the two offenses arose from one continuous course of conduct. Nevertheless, we find that the trial court committed no error in overruling the motion for a judgment of acquittal of the charge of attempted theft and the motion for a new trial in reference to this issue: the convictions for attempted theft and first degree theft were not based on the same course of conduct.
However, we find merit to the appellant's contention that § 13A-4-5(b) and (c) prohibit his conviction for conspiracy to commit theft in the first degree, under the facts of this case. Here, a conviction for conspiracy to commit theft would have to be and was based upon the same facts or course of conduct for which the appellant was convicted of theft; thus that conviction violated § 13A-4-5(b)(3). Moreover, § 13A-4-5(c) prohibits a conviction for an attempt and conspiracy for "a single course of conduct designed to commit or to cause the commission of the same crime," which provision applies here to the convictions for attempted theft and conspiracy, which arose out of the same course of conduct.
 "Subsection (b) merges the inchoate crime into the conviction for the substantive crime to the extent that it bars a double conviction for both the substantive crime and an attempt, a solicitation to commit the crime, or a conspiracy to commit the crime.
 "Subsection (c) precludes cumulative convictions for more than one inchoate offense, where each is designed to achieve the same criminal objective. Aside from double jeopardy, collateral estoppel and harassment problems, there is no justification in cumulating convictions for the common potential danger posed with respect to a single objective."
Commentary, § 13A-4-5.
The appellant's conviction for conspiracy to commit theft was prohibited by law, and the trial court committed reversible error in not granting the motion for a judgment of acquittal. Thus, the conviction for conspiracy must be reversed.
 II.
The appellant contends that the trial court erred by not conducting a restitution hearing pursuant to § 15-18-67. No objection was made in the trial court to its failure to conduct a restitution hearing; therefore, nothing has been preserved for our review on appeal in this regard. See Stork v. State,475 So.2d 622, 623 (Ala.Cr.App. 1984), rev'd on other ground,475 So.2d 623 (Ala. 1985). We have previously discussed the matter of restitution in this opinion and concluded from the record that the trial court ordered restitution, but retained jurisdiction to determine the amount to be paid and the manner of payment when the appellant is released from confinement and enters his period of probation. We also concluded, contrary to the state's assertions, that no amount has been set, that there appears to have been no agreement as to the amount, and that in the interest of judicial economy, the trial court should ultimately conduct a restitution hearing before setting an amount so that the parties may present evidence and be heard. *Page 893 
 III.
The appellant contends that the trial court erred in sustaining the prosecutor's objections to certain questions addressed to him on direct examination, claiming that the effect of the ruling was to deny him the right to testify as to his intent in reference to the charges. The record in this regard shows the following:
 "Q. [Defense counsel]: How would you describe for this jury your knowledge, the construction, as a subcontractor, from the early days in Florence County, South Carolina, until these end of days in Atlanta, Georgia?
 "A. I learned quite a bit over the few months that I worked. I was more knowledgeable of what was going on. Every job's a learning process.
 "Q. For example, what were some of the things that you learned as far as invoicing?
 "A. As far as invoicing, I had learned that the procedures that were in the later invoices were easier for me, you know. As you will see on the later invoices, the last two jobs, I didn't do a whole lot of back-charging. There's just too much paperwork, too much involved, and it wasn't worth it, to me, for the hassle, most of the time. If there was a job available like there was on the bars and they approached my foremen or me to do it, then I would do it but I wasn't pushed — we was pushed too much for time. I learned it was a whole lot easier job for each individual invoice, it was easier to invoice and know exactly what should be sent, and I did it myself. It was just a lot easier on me because you learn a lot as you go along.
 "Q. Was there anything else in this learning curve that you had picked up from Florence County to Atlanta?
 "A. I don't know that there is that would, you know —
 "THE COURT: All right. Next question. He said he doesn't know whether there is. Next question.
 "Q. How would you compare your record-keeping from Florence County, South Carolina, to Atlanta?
"MR. MAYER: Objection, Your Honor.
"THE COURT: Sustained.
 "MR. STONER: Judge, the state has gone to great lengths to represent a complete absence of records in this man's business to represent his criminal intent.
 "THE COURT: Let me tell you like I told one of the lawyers yesterday. I sustain the objection."
After examining the record, and particularly the testimony of the appellant immediately before the ruling of the trial court, we find no error in the ruling. The appellant's counsel stated that the purpose of the line of questioning was to illustrate that the appellant kept adequate records. The trial record shows that the appellant was allowed to testify and did testify extensively about his work for the corporation and his billing practices. The objection was addressed to attempts to question the appellant further about matters as to which he admittedly had no knowledge or about matters as to which he had previously testified. The appellant's contention that he was not allowed to testify as to his intent is not supported by the record. The record shows:
 "Q. [Defense counsel]: Mr. Perkins, have you stolen any money from Norment Industries in the manner alleged by the State of Alabama?
"A. No, sir.
 "Q. Have you entered into any criminal agreement, a conspiracy with Joey Bryant and/or Ed Tumlinson for the purpose or with the intent to steal money from Norment Industries by false invoices, overinflated contracts, and those types of things?
"A. No, sir.
 "Q. Have you attempted to steal any money from Norment by the methods alleged by the State of Alabama?
"A. No, sir."
 IV.
The appellant contends he was denied effective assistance of counsel at trial because counsel failed to file a pretrial motion to strike "surplusage" from the indictment or a motion for a more definite statement as to the charges. This issue was not *Page 894 
raised in the trial court and, therefore, was not preserved for appellate review. The appellant raised ineffectiveness of counsel in his motion for a new trial, alleging several grounds; however, the ground he now asserts on appeal was not one of them. A defendant is bound by the grounds of objection stated at trial and may not expand those grounds on appeal.Griffin v. State, 591 So.2d 547 (Ala.Cr.App. 1991); Bell v.State, 435 So.2d 772 (Ala.Cr.App. 1983). The trial court will not be placed in error for grounds not raised at trial. Griffinv. State; Reeves v. State, 456 So.2d 1156 (Ala.Cr.App. 1984). Moreover, assuming arguendo, that this contention had been properly reserved for review, upon consideration of the facts and circumstances presented, we find no merit in it.
 V.
The appellant contends that his sentences are disproportionate to the sentences of his codefendants Tumlinson and Bryant. He claims that he was given harsher sentences because he exercised his right to go to trial and he argues that this effectively denied him equal protection of the law.
 "Regardless, '[s]eparate treatment of defendants does not violate any constitutional guarantee of equal protection so long as that treatment is reasonable and founded on a rational basis.' Wheatt v. State, 410 So.2d 479 (Ala.Cr.App. 1982). . . . We also note that '[s]entencing judges are vested with wide discretion' and that 'there is no requirement that two persons convicted of the same offense receive identical sentences.' Maddox, 502 So.2d at 793 (quoting Williams v. Illinois, 399 U.S. 235, 243 [90 S.Ct. 2018, 2023, 26 L.Ed.2d 586] (1970))."
Carroll v. State, 599 So.2d 1243, 1244-45 (Ala.Cr.App. 1992).
 "[A] codefendant's sentence is immaterial to the propriety of a sentence imposed on a defendant. Indeed, 'the government is permitted to encourage guilty pleas by offering substantial benefits to a defendant, and [the appellant,] having rejected the offer of a plea bargain, cannot complain that his codefendants received the benefit of a light sentence.' [D]isparity in sentencing may be proper where a co-defendant receives a lighter sentence pursuant to a plea agreement and that sentence is no basis for comparison to another codefendant's sentence. (Citations omitted.)"
Moore v. State, 539 So.2d 416, 422 (Ala.Cr.App. 1988), citingUnited States v. Chase, 838 F.2d 743, 751 (5th Cir.), cert. denied, Mesa v. U.S., 486 U.S. 1035, 108 S.Ct. 2022,100 L.Ed.2d 609 (1988). See Frank v. Blackburn, 646 F.2d 873 (5th Cir. 1980), cert. denied, 454 U.S. 840, 102 S.Ct. 148,70 L.Ed.2d 123 (1981).
The appellant first raised this contention in his motion for a new trial. He alleged no facts in that motion to support his contention and he presented none at the hearing on the motion. At the hearing, the trial court explained why it sentenced the appellant as it did, and its explanation was reasonable, rational, and free of any hint of bias or vindictiveness. Its explanation was not disputed or contradicted. The sentences were well within the authorized statutory limits, based upon the facts of the case, and, in our opinion, were not imposed because the appellant sought a trial of his case. We find no merit in this contention, and the trial court's denial of the motion for a new trial on this ground was proper.
 VI.
The appellant contends that the trial court erred in denying his motion for a new trial on the ground that he was convicted on the uncorroborated testimony of codefendant Tumlinson. We do not agree. First, the issue of corroboration of the testimony of Tumlinson was not raised at trial by proper objection and, thus, was not preserved for appellate review. Timely objections must be made to preserve an assignment of error for appellate review, and the objection should be made as soon as the objectionable ground becomes apparent. Leverett v. State,462 So.2d 972 (Ala.Cr.App. 1984). Here, Tumlinson was the first witness called by the state, and no objection was raised during the trial that his testimony was uncorroborated. Moreover, Tumlinson's testimony was sufficiently *Page 895 
corroborated by numerous witnesses and documents.
The appellant further questions the admission of Tumlinson's testimony before proof of a conspiracy had been made. While we need not concern ourselves with this question because we have vacated the appellant's conviction for conspiracy, we note that corroboration and other evidence establishing a conspiracy came after Tumlinson's testimony; thus, any error that may have occurred was cured under the circumstances here. "Although proof of the conspiracy should be made before admittance against the accused of the co-conspirator's act or statement, subsequent proof of the conspiracy cures any error in prematurely admitting the act or statement." See Goodwin v.State, 644 So.2d 1269, 1276 (Ala.Cr.App. 1993), citing Lundy v.State, 539 So.2d 324, 330 (Ala.Cr.App. 1988).
For the above reasons, the judgments of convictions for theft of property in the first degree and for attempted theft of property in the first degree are due to be, and are hereby, affirmed. The judgment of conviction for conspiracy to commit theft of property in the first degree is due to be, and it is hereby, reversed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED AS TO THE CONVICTIONS FOR THEFT OF PROPERTY AND ATTEMPTED THEFT OF PROPERTY; REVERSED AS TO THE CONVICTION FOR CONSPIRACY TO COMMIT THEFT OF PROPERTY; AND REMANDED.
All Judges concur.
[1] This issue was clearly preserved by the motion for a new trial. Because no such claim was viable before trial (because the claim rests on double convictions, not double charges), this motion timely raised the issue. See Rolling v. State,673 So.2d 812, 815-16 (Ala.Cr.App. 1995).