WELCH, Judge.
Roland Gilbert Campos III was convicted of two counts of sexual abuse of a child less than 12 years old, violations of § 13A-6-69.1, Ala.Code 1975, and of two counts of first-degree sodomy, violations of § 13A-6-63(a)(3), Ala.Code 1975. The trial court sentenced Campos to 20 years’ imprisonment for each sexual-abuse conviction and to life imprisonment without the possibility of parole[1] for each sodomy conviction; the sentences were to run concurrently. Campos filed a timely motion for a judgment of acquittal and a motion to reconsider his sentence. Following a hearing, the trial court denied both motions. This appeal follows,
The evidence adduced at trial indicated the following. In the summer of 2011, *4 Campos moved in with his then girlfriend, C.J., and her four-year-old daughter, K.S., and her five-year-old son.[2] C.J. trusted Campos, and Campos often kept the children if they were sick or if C.J. took the other child somewhere. Campos, who was referred to by everyone in the house as “Roily,” was 32 years old when he moved in with C.J. and her children.[3]
One day in February 2013, C.J. picked K.S. up from C.J.’s mother, who had gotten K.S. from school because K.S. was sick. On the drive home, C.J. told K.S. that because she could not go to school the next day and C.J. had to work, she would have to stay with Campos. K.S., who had just turned six that December, “kept saying momma, momma, I don’t want to. Can I stay with Grammy?” (R. 143.) C.J. told K.S., “[N]o, you can stay with Roily.” (R. 143.) K.S. asked her mother if she could stay with her uncle, and C.J. told K.S. that her uncle lived too far away. C.J. asked K.S. why she did not want to stay with Campos. K.S., replied, “I just don’t.” (R. 143.) K.S. continued to tell C.J. that she did not want to stay with Campos. Again, C.J. asked why, and K.S. said that she could not tell C.J. because C.J. would get mad. C.J. told K.S. that she would get mad if K.S. did not tell her why she did not want to stay with Campos. K.S. told C.J. that Campos made her do “gross things.” (R. 144.) C.J. asked K.S. to tell her what kind of things Campos made her do, and C.J. testified that “that’s when she took her hands and placed them near her private parts and she said he makes me do things with my hands. And she moved them up and down.” (R. 144.) C.J. testified that she “froze for a moment,” gathered her thoughts, and then asked K.S. what else Campos did. (R. 144.) K.S. said, “[Mjomma, he makes me stick it in my mouth.” (R. 145.) C.J. asked K.S. if there was anyone else that does that to her, and K.S. said that “it’s just Roily and I wasn’t supposed to tell you because he would be mad at me.” (R. 145.)
C.J. took K.S. to Angela Churchwell’s house, which was located a few houses down from C.J.’s house. Churchwell often kept C.J.’s children, and K.S. referred to her as “Mom Number Two.” (R. 172.) C.J. told Churchwell about KS.’s allegations against Campos. Churchwell told C.J. that Campos had picked up her son and that C.J. should go get him. C.J. asked Churchwell to speak to K.S. while C.J. went to get her son.
Churchwell pulled K.S. into a bedroom so they could speak privately. She told K.S. that C.J. had told her that Campos had done some things to her and asked K.S. to tell her what happened with Campos. K.S. told her that she could not tell her because Campos would hurt her. Churchwell assured K.S. that she was safe and again requested that K.S. tell her what had happened. K.S. told her that “he was taking her hands and making her put them on him.” (R. 169.) She acted it out for Churchwell, cupping her hands together. Churchwell demonstrated the action for the jury. K.S. then said that “he made her put her mouth on it. And that sometimes she would get sick because it was so gross.” (R. 170.) Churchwell testified that K.S. called “it” “his tail,” a term children sometimes use to describe a penis and that K.S. pointed to the penis area. K.S. also said that “he takes it and rubs it on me down there.” (R. 170.) Churchwell asked K.S. why K.S. did not tell her about *5 what had happened before then and K.S. said, “[B]ecause he said he would make it worse, he would put it all the way in.” (R. 170.)
When C.J. arrived home to get her son, she told Campos what K.S. had told her. Campos replied, “[W]ell, just don’t leave her alone with me because I didn’t do it.” C.J. told him that was not a possibility and that she would “get to the bottom of it.” (R. 146.) C.J. reported Campos to law enforcement, and Campos moved out shortly thereafter.
C.J. testified that she would leave KS. alone with Campos whenever her son had Cub Scouts or when K.S. was sick and C.J. had to work. Her son began going to Cub Scouts in August or September 2012. C.J. testified that KS. told her that the abuse started around the time C.J. drove the red car, which, according to C.J., was in the spring and summer of 2012.
KS., who was seven years old at the time of trial, testified that she referred to Campos as “Roily” and that he told her to put her mouth on his private and then wiggle it back and forth. He told her that he would give her candy if she did it and that she would taste nothing but candy. Before that, he told her to wiggle her hands back and forth, and he showed KS. what to do. KS. testified that he licked her private part and that she was five years old when the incidents occurred. KS. testified that Campos did these things when her mother was gone and that he told her that if she told anyone what he did then “he would shove it all the way down her throat and it would hurt really bad.” (R. 187.) KS. testified that his “weiner” had hair on it and that it did not taste good. She said that it made her sick, and she would throw up afterwards. (R. 188.) She could not remember if Campos had ever touched her private parts with his hands.
Linda Steele, a senior trainer and child-forensic-review specialist with the National Children’s Advocacy Center, conducted a forensic interview with KS. at the center on February 8, 2013. KS. was six years old at the time of the interview. The video of that interview was admitted into evidence.
Investigator Melissa Webster with the Madison County Sheriffs Office observed Steele’s interview with KS. Following the interview, Webster met with Campos at the National Children’s Advocacy Center and informed him of KS.’s allegations. Webster testified that Campos’s body language during the interview was “very frozen. Just sitting still, not moving. Trying to stare me down.” (R. 86.) Webster found it odd that he never moved and “felt like he was trying to intimidate [her] by playing, a stare-down game with [her].” (R. 87.) Webster testified that Campos admitted that he had touched KS. on two occasions. - “Once in the presence of mom, bent over his knees ... looking at her private area,” but he could not remember why. (R. 88.) “Another time her mother was not home, he said he put some ointment on her private area because she ... wasn’t wiping good or something.” (R. 88.) Campos told Webster that KS. was a truthful child and that “if [K.S.] said it happened, it happened, just not with [him].” (R. 88.) Webster asked Campos about other suspects, and Campos gave her the name of C.J.’s stepfather. Webster testified that she found KS. credible because “[s]he not only told what happened, but she gave details, what it tastefd] like, what her hands had to do. And kids normally can’t tell you that if it didn’t happen to them at that age.” (R. 130.)
Campos testified on his own behalf at trial and denied that he had ever sexually abused KS. Campos admitted that he had *6 seen K.S. naked twice. The first time occurred when K.S.’s “tee-tee” was hurting and, because C.J. was not at home, he had to put ointment on K.S. The second time occurred when K.S. was covered in little red bumps and C.J. told him to look at her. Campos testified that he did not feel comfortable doing those things and that he let C.J. handle those situations if she was at home.
I.
Citing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny, Campos argues that the trial court erred in applying the enhancement set forth in § 13A—5—6(a)(1), Ala.Code 1975, to his sentences for first-degree sodomy. He argues that the application of the enhancement ran afoul of Apprendi because, he argues, the jury did not make a determination as to the ages of the victim and Campos, an element necessary to impose the enhanced penalty.[4]
Along with his convictions for sexual abuse, Campos was convicted of two counts of first-degree sodomy which, as a Class A felony, has a sentencing range of 10 years to 99 years or life. § 13A-5-6(a)(1), Ala.Code 1975. The trial court sentenced Campos under Section 13A-5-6(d), Ala.Code 1975. § 13A-5-6(d) applies additional penalties for certain sex offenses when the defendant’s and victim’s ages are within a certain range:
“In addition to any penalties heretofore or hereafter provided by law, in all cases where an offender is convicted of a sex offense pursuant to Section 13A-6-61, 13A-6-63, or 13A-6-65.1, when the defendant was 21 years of age or older and the victim was six years of age or less at the time the offense was committed, the defendant shall be sentenced to life imprisonment without the possibility of parole.”
“A person commits the crime of sodomy in the first degree if ... [h]e, being 16 years old or older, engages in deviate sexual intercourse with a person who is less than 12 years old.” § 13A-6-63(a)(3), Ala. Code 1975. If the defendant is 21 years of age or older and the victim is six years of age or younger, the minimum and maximum sentence for first-degree sodomy is raised to life imprisonment without parole.
The indictment did not charge the enhancement. The jury was instructed regarding the elements of first-degree sodomy. Therefore, the jury was not required to find that the victim was 6 years of age or younger or that the defendant was 21 years of age or older as required by § 13A-5-6(d), Ala.Code 1975. The jury’s verdict sheets did not contain a separate finding by the jury that the victim was 6 years of age or younger or that the defendant was 21 years of age or older.
In Apprendi, supra, the defendant pleaded guilty to an offense that carried a sentencing range of 5 to 10 years. The trial court imposed a 12-year sentence pursuant to a hate crime statute that allowed a sentence to be enhanced if the trial court found by a preponderance of the evidence that the crime had been motivated by racial bias. The United States Supreme Court held that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond *7 the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt.” Id. at 490. The Apprendi Court characterized the distinction between a sentencing factor and' an element as “constitutionally novel and elusive.” 530 U.S. at 494. In a footnote, the Apprendi Court stated that it was not suggesting that the term “sentencing factor” is devoid of meaning but that
“[t]he term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury’s finding that the defendant is guilty of a particular offense. On the other hand, when the term ‘sentence enhancement’ is use to describe an increase beyond the maximum authorized by statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury’s guilty verdict. Indeed, it fits squarely within the usual definition of an ‘element’ of the offense.”
Apprendi, 530 U.S. at 495, n. 19 (citation omitted). The Court concluded that “the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury’s guilty verdict?” Apprendi, 530 U.S. at 494.
Four years later, in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court applied Ap-prendi in examining a sentence imposed' following the defendant’s guilty plea. The Court, addressing the State’s claim that the sentence fell within the statutory maximum, stated:
“Our precedents make clear, however, that the ‘statutory maximum’ for Ap-prendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant'‘statutory maximum’ is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts Vhich the law makes essential to the punishment,’ and the judge exceeds his proper authority.”
Blakely, 542 U.S. at 303-04 (citations omitted).
After considering the holdings of Apprendi and Blakely, we conclude that the trial court’s application of the enhancement to Campos’s sentences for first-degree sodomy was in violation of Apprendi. The relevant “statutory maximum” for a violation of § 13A-6-63(a)(3), Ala.Code 1975, is 99 years’ or life imprisonment; that is the maximum sentence the trial court could have imposed without any additional findings. In order to sentence a defendant pursuant to § 13A-5-6(d), Ala. Code 1975, to the elevated sentence of life imprisonment without the possibility of parole, a finder of fact must determine that the defendant was 21 years of age or older and that the victim was 6 years of age or younger. The indictment, jury instructions, or verdict forms do not reflect the elements—the defendant’s and the victim’s ages—of the enhanced sentencing provision. However, the fact that an Apprendi violation occurred does not end our analysis.
In Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the United States Supreme Court held that “a [jury] instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or *8 innocence” and that a harmless-error analysis may be appropriate. In Neder, the trial court failed to instruct the jury on materiality, an element of the offense charged, and, as a consequence, the juiy necessarily made no finding on materiality. The Supreme Court held that this error was subject to a harmless-error analysis and that an error is harmless when it “appears ‘beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.’ ” Id. at 15 (quoting Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The Neder Court found that if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and was supported by overwhelming evidence, so that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. If the reviewing court concludes that the verdict would not have been the same such as “where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding,” the error would not be harmless. Id. at 19.
In Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), the jury found the defendant guilty of assaulting his wife with a deadly weapon, which the information charged was “a handgun.” The trial court found that the defendant was armed with a “firearm” and imposed a three-year mandatory sentence enhancement attendant to its finding. On appeal, the State conceded that the trial court violated Apprendi and its progeny but argued that the error was harmless. In Recuenco, the Supreme Court applied Neder to an Apprendi violation and held that a “[fjailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error” and remains subject to harmless-error analysis. Id. at 221.
Pursuant to Neder and Recuenco, our review of the record indicates that, absent the error, the jury would have returned the same verdict. Evidence of both the victim’s and defendant’s age was provided to the jury. K.S. herself testified that she was five years old when the incidents occurred. Testimony was also presented that K.S. was six years old at the time she reported the incidents to her mother and to law enforcement. Campos testified that he was born in 1979, which made him 21 years old or older in 2012, when evidence indicated the incidents occurred. No testimony was presented that any incidents occurred after K.S. turned seven and, given that Campos was born in 1979, the incidents could not have occurred before he was 21 years of age because K.S. would not have even been born at that time. The evidence establishing that the victim was 6 years of age or younger and that the defendant was 21 years of age or older when the offenses occurred was uncontested. No evidence was presented to support a contrary finding regarding the victim’s and defendant’s age. The jury found Campos guilty of the offenses, and implicit in that finding is the finding that when the offenses occurred KS. was not only 12 years of age or less, but also that she was 6 years of age or younger and that not only was Campos 16 years of age or older, but also that he was 21 years of age or older. In light of the clear and uncontested evidence in the record of the victim’s and defendant’s ages when the offenses occurred, we conclude, beyond a reasonable doubt, that had the ages in the enhancement been submitted to the jury, the jury’s verdict would have been the same. Accordingly, we find the error in this case harmless.[5]
*9 [[Image here]]
Campos contends that the trial court erred by allowing three witnesses to testify to KS.’s out-of-court statements and by allowing the video of KS.’s interview into evidence. Campos claims that Webster, C.J., and Churchwell testified to statements K.S. had made and that this testimony was inadmissible hearsay.
Campos did not object to the admission of the video of the interview, and he did not object on a hearsay basis during Webster’s testimony. Because Campos failed to argue before the trial court that the video of the interview and Webster’s testimony were hearsay, his argument is not properly before this Court. See Harris v. State, 563 So.2d 9, 11 (Ala.Crim.App.1989) (defendant must first obtain an adverse ruling in order to preserve an issue for appellate review); Jordan v. State, 574 So.2d 1024, 1025 (Ala.Crim.App.1990) (claim was not preserved for appellate review where defendant did not first present his argument to the trial court); Cooper v. State, 912 So.2d 1150, 1158 (Ala.Crim.App.2005) (quoting Myrick v. State, 787 So.2d 713, 718 (Ala.Crim.App.2000) (“ ‘This [Cjourt will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court.’”)).
Moreover, all the testimony regarding KS.’s out-of-court statements as well as the video of her interview were properly admitted into evidence.
Section 15-25-31, Ala.Code 1975, provides, in pertinent part:
“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met.”
Section 15-25-39, Ala. Code 1975, provides:
“For purposes of this article, a ‘child physical offense, sexual offense, and exploitation’ is defined to include the following crimes, when one or more of the victims is a child under the age of 12:
[[Image here]]
“(2) Sodomy in any degree.
“(3) Sexual abuse in any degree. ”
Section 15-25-32(1), Ala.Code 1975, states:
“An out-of-court statement may be admitted as provided in Section 15-25-31 if: (1) The child testifies at the proceed *10 ing, ... and at the time of such testimony is subject to cross-examination about the out-of-court statements.,.. ”
In the instant case, Campos faced charges of first-degree sodomy and sexual abuse, charges contemplated by § 15-25-39. The statements K.S. made to her mother, to Webster, and to Steele, along with the video of K.S.’s interview regarding Campos’s acts of abuse, contemplated material elements of first-degree sodomy and of sexual abuse. Finally, K.S. testified at trial and was subject to cross-examination. Thus, the trial court did not err in admitting the hearsay testimony and video pursuant to § 15-25-32.
In his brief, Campos acknowledges that § 15-25-31 may have applied; however, he argues that the State did not assert that statute, nor did it comply with the notice requirement in § 15-25-35, Ala.Code 1975. Campos failed to preserve this specific argument for appellate review. Because Campos failed to first present his argument to the trial court and obtain an adverse ruling, he did not preserve this issue for this Court’s review. See Harris, supra; Jordan, supra. Accordingly, Campos is not entitled to any relief.
III.
Campos claims that the evidence was insufficient to sustain one of his convictions for sexual abuse. Specifically, Campos contends that the evidence is insufficient because, he says, “[t]he record contains no substantive evidence indicating any inappropriate touching with the hands.” (Campos’s brief, p. 29.) Campos argues that “[t]he only evidence on the record of inappropriate touching was hearsay.” (Campos’s brief, p. 29.)
Campos never argued to the trial court, as he now argues on appeal, that the State failed to prove an inappropriate touching to sustain one of the convictions for sexual abuse. Nor, as to this conviction, did Campos ever make a general argument that the evidence" was insufficient to warrant submitting the case to the jury or that the State failed to prove a prima facie case, or other similar language that would have preserved his specific argument for appellate review. The record reflects that after the State rested Campos moved for a judgment of acquittal, stating:
“We make a motion for a judgment of acquittal. The State has not proven a prima facie case on any of the counts of the indictment. There has been no evidence relating to Mr. Campos’ age. All four of these counts require that the State prove that he is 16 years of age or older. That’s the basis of our motion.”
(R. 250.) Campos directed the trial court’s attention to whether the State proved his age. He did not argue that the State had failed to prove that an inappropriate touching occurred, an element necessary to sustain his conviction for sexual abuse. At the close of all the evidence, Campos renewed his motion. Campos filed a motion for a judgment of acquittal after the trial; however, his only argument regarding the sufficiency of the evidence was that the State failed to prove his age. Therefore, Campos did not preserve the specific argument he now raises on appeal for appellate review. “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). “It is well established that a defendant who states specific grounds in his motion for a judgment for acquittal waives all grounds not stated.” Ex parte Hall, 843 So.2d 746 (Ala.2002). Therefore, Campos’s sufficiency argument as it applies to his conviction for sexual abuse is not properly before this Court for review. *11 See, e.g., Davis v. State, 42 So.3d 162 (Ala.Crim.App.2009).
Moreover, even if Campos preserved his claim that the evidence was insufficient to sustain his conviction for sexual abuse, his claim is without merit. Campos does not contend that there was no testimony to support his sexual-abuse conviction; rather, he argues only that the statements were hearsay and that' they could not be considered as substantive evidence to support his conviction. This argument, however, has been decided adversely to Campos. In M.L.H. v. State, 99 So.3d 911, 914 (Ala.2011), the Alabama Supreme Court held that “if a hearsay statement, even a prior inconsistent out-of-court statement, falls within the parameters of § 15-25-31 and satisfies the other requirements of the Act, it is admissible as substantive evidence.” In other words, be- ■ cause KS.’s statements were admissible under § 15-25-31, the statements could properly be considered as substantive evidence of Campos’s guilt. Because KS.’s statements can properly be considered as substantive evidence of Campos’s guilt, we must now determine whether the State’s evidence was sufficient to support Campos’s convictions for sexual abuse.
Section 13A-6-69.1(a), Ala.Code 1975, provides' that “[a] person commits the crime of sexual abuse of a child less than 12 years old if he or she, being 16 years old or older, subjects another person who is less than 12 years old to sexual contact.” Further, “sexual contact” is defined as “[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.” Section 13A-6-60(3), Ala.Code 1975.
“In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of - acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
“ ‘In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.’ Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
[[Image here]]
“‘“The role of appellate courts is not to say what the facts are. Our *12 role, ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.” Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962) .... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[Wjhere there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).’ Granger [v. State ], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989). Also, it is well settled that “[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.” Smith v. State, 698 So.2d 189, 214 (Ala. Crim.App.1996), aff'd, 698 So.2d 219 (Ala. 1997).
Viewed in the light most favorable to the State, the testimony and other evidence offered by the State were sufficient to establish prima facie cases of two counts of sexual abuse. As stated above, the State provided evidence that established, among other things, that when K.S. was five years old Campos directed K.S. to touch his penis with her hands. K.S. testified to that fact herself, and this testimony was sufficient to establish sexual contact. See Ray v. State, 52 So.3d 547 (Ala.Crim.App.2007), reversed on other grounds, 52 So.3d 555 (Ala.2009)(holding that the element of sexual contact could be satisfied when the defendant directs the victim to touch his penis). Churchwell testified that when K.S. was six years old, K.S. told her that Campos rubbed his penis on her “down there.” (R. 170.) As stated above, the Alabama Supreme Court has held that out-of-court - statements admissible under § 15-25-31, a part of the Child Sexual Abuse Victim Protection Act, § 15-25-30 et seq., Ala.Code 1975, are admissible as substantive evidence. M.L.H. v. State, supra. Thus, KS.’s statement to Church-well, to which Churchwell testified, may be considered as substantive evidence of Campos’s guilt. The evidence clearly establishes prima facie cases of two counts of sexual abuse. Accordingly, the trial court properly denied Campos’s motions for a judgment of acquittal.
IV.
Campos contends that the trial court erred when it precluded him from questioning C.J. about C.J.’s stepfather having sexually abused C.J. when C.J. was a child. Campos argues that the fact that C.J. had been a victim of sexual abuse was relevant “to show bias, prejudice, and other issues relevant to credibility.” (Appellant’s Brief, p. 33.) Campos also claims that the trial court erred when it precluded him from asking C.J. and other witnesses, including himself, about whether the sexual abuse of KS. had been committed by C.J.’s stepfather.
Campos’s argument that the preclusion of evidence that C.J. had been sexually abused by her stepfather was error because that evidence was relevant to show bias is not preserved for appellate review. Campos failed to make this argument when arguing for the admission of *13 this evidence. Campos argued at trial only that the evidence was relevant to show that C.J.’s stepfather may have committed the offenses for which Campos had been charged. “Because the grounds raised on appeal are different from those advanced at trial, this issue was not properly preserved for appellate review.” Hyde v. State, 778 So.2d 199, 216 (Ala.Crim.App.1998), aff'd, 778 So.2d 237 (Ala.2000). “Review on appeal is limited to review of questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1989).
Campos’s argument that evidence indicating that C.J. had been sexually abused by her stepfather would have been relevant to show that another party committed the offenses is without merit. A defendant has a constitutional right to prove his innocence by presenting evidence that another person committed the crime with which he is charged. Ex parte Griffin, 790 So.2d 351 (Ala.2000). That right is not absolute, however. A trial court has discretion to preclude evidence of a third party’s culpability when the proffered evidence is merely speculative and presents a danger of confusing the jury. The Alabama Supreme Court has discussed a three-part test to be applied to determine whether and when such hearsay evidence might be properly admitted to show that a third party committed the crime charged: (1) the evidence must be related to the “res gestae” of the crime; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence would have to be admissible if the third party was on trial. Id. at 354.
Campos is unable to meet the three-prong test required to make evidence of third-party guilt admissible. Testimony regarding acts committed against C.J. by her stepfather when C.J. was a child do not relate to the res gestae of the offenses—that is, those acts of sexual abuse are not derived from the facts and circumstances of this case. Further, Campos is unable to satisfy the second prong. The evidence Campos claims should have been allowed at trial does not exclude him as a perpetrator. Evidence indicating that C.J.’s stepfather had sexually abused her as a child is not among the kind of evidence encompassed in the second prong of the test enumerated in Griffin. Testimony regarding C.J.’s stepfather would not exculpate Campos of guilt. Also, the evidence showed that C.J.’s stepfather was never alone with K.S. Additionally, any testimony regarding such would have confused the jury. Therefore, the trial court properly prevented Campos from soliciting such testimony.
V.
Campos argues that the trial court erred in allowing the State to bolster KS.’s credibility. Specifically, Campos claims that Webster’s and Churchwell’s testimony regarding KS.’s truthfulness was improper testimony and that their testimony was used to bolster the credibility of KS.’s testimony prior to KS.’s character for truthfulness being attacked, in violation of Rule 608(a)(2), Ala. R. Evid. Campos, however, neither objected on these grounds nor raised these arguments below. “ ‘[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.’” Ex parte Coulliette, 857 So.2d 793, 794 (Ala.2003), quoting McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995). The trial court will not be put in error on grounds raised for the first time on appeal. Ex parte Frith, 526 So.2d 880 (Ala.1987); Perkins v. State, 715 So.2d 888, 894 (Ala.Crim.App.1997) (“The trial court will not be placed in error for grounds not *14 raised at trial.”); Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992) (“An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.”); Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989) (“Review on appeal is restricted to questions and issues properly and timely raised at trial.”). Because no timely objections were made at the time of the questioning, this claim is not preserved for our review.
VI. and VII.
Campos claims that the trial court erred when it instructed the jury that the victim’s testimony alone' was sufficient to establish a prima facie case and when it instructed the jury that Campos’s testimony was to be considered in light of his special interest in the case. Campos’s claims are not preserved for review. The State argues, and we agree, that this issue is not preserved for review.
“No party may assign as error the court’s giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.”
Rule 21.3, Ala. R.Crim. P.
These claims are being presented for the first time on appeal and, thus, are not preserved. As previously stated, appellate review is limited to claims raised at the trial level. Newsome, supra.
VIII.
Campos argues that the trial court erred by instructing him to redact references he made in the video of his interview with Webster to C.J.’s stepfather as an alternate suspect before he could play the video for the jury. Campos cites Rule 106, Ala. R. Evid., and argues that because Webster was able to testify as to what was said in the interview and to her conclusions from his body language, he should have been allowed to play the complete version of the video of the interview. Campos argues that he was prejudiced by the redaction because, he says, he alleges in the redacted portion that there is an alternative suspect when asked if anyone else could be a suspect. Rule 106, Ala. R. Evid., provides:
“When a party introduces part of either a writing or recorded statement, an adverse party may require the introduction at that time of any other part of the writing or statement that ought in fairness to be considered contemporaneously with it.”
The rule is often referred to as the “completeness doctrine.” See, e.g., Belisle v. State, 11 So.3d 256, 284 (Ala.Crim.App.2007).
The Commentary to Rule 106, Ala. R. Evid., clarifies that “[a]nother completeness principle lying outside of Rule 106 is that under which a party, whose admission has been admitted against him or her, may prove all that was said at the same time as the admission and on the same subject.” Surviving the adoption of the rule is the principle “that if one party proves any part of an unrecorded oral conversation or oral statement, the other party has the right to prove the relevant remainder of it.” Id. Furthermore, the Advisory Committee’s Note to Rule 106, Ala. R. Evid., states that the rule “vest[s] in the trial judge considerable discretion to determine what ‘in fairness’ ought to be considered with the part introduced.” Regarding the admissibility of statements with respect to the rule of completeness, the Alabama Supreme Court has held:
*15 “ ‘[T]he general rule is that only so much of the remainder of the statement or conversation is admissible as relates to the subject-matter of the part brought out by the opponent.’
“C. Gamble, McElroy’s Alabama Evidence § 316.01 (1977). Thus, the relevancy to the subject matter brought out is the standard by which a party might call for the remainder of a conversation partially proved by his opponent.”
Ex parte Ray, 52 So.3d 555, 559 (Ala.2009).
Initially, we note that Campos, not the State, sought to admit the video of his interview into evidence. The trial court had denied Campos’s request to play the video during Webster’s testimony when Campos sought to introduce the video for the purpose of showing his demeanor during the interview after Webster had testified about his demeanor. The trial court granted Campos’s subsequent request to play the video upon the condition that Campos testify and that he redact from the video references to CJ.’s stepfather. The trial court had previously granted the State’s motion in limine to exclude any references to C.J.’s stepfather. Campos did not object at any time on the basis that he should be allowed to introduce the full interview under Rule 106, Ala. R. Evid., or the doctrine of completeness. Thus, Campos did not preserve this issue for appellate review. See Ex parte Frith, supra.
Moreover, even if this issue had been preserved, Campos is not entitled to any relief. As discussed above in section IV, any references to C.J.’s stepfather were inadmissible. Accordingly, the trial court properly ordered that the references be redacted. Furthermore, even though references to C.J.’s father were redacted in the video of the interview, Webster testified that when Campos was asked about other suspects, he gave her the name of C.J,’s stepfather.
IX.
Campos contends that the trial court erred by improperly commenting on its opinion as to his guilt or innocence. Campos points to a comment made by the trial court during its questioning of K.S. before her testimony at trial. Before KS.’s testimony, the trial court asked KS. several questions, including if she knew why she was in the courtroom that day. K.S. answered that she was there “[a]bout what he did.” (R. 181.) The trial court responded, “Right.” (R. 181.) Campos did not object to the trial court’s comment; therefore, he has not preserved this issue for our review. See Newsome, supra.
X.
Campos argues that the trial court erred by allowing Webster to testify that Campos was lying. On redirect examination of Webster, the prosecutor asked Webster why she believed KS.’s statement rather than Campos’s statement. Webster testified as to why she believed KS.’s statement was credible and Campos’s statement was not credible. Campos did not object when Webster was asked about KS.’s or Campos’s credibility on redirect examination; thus, this issue is not preserved for our review. See Ex parte Frith, supra.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. Section 13A-5-6(d), Ala.Code 1975, provides that where an offender is convicted of a sex offense pursuant to § 13A-6-63, Ala.Code 1975, and the defendant was 21 years of age or older and the victim was 6 years of age or less at the time the offense was committed, the defendant shall be sentenced to life imprisonment without the possibility of parole.

. Initials are used throughout the opinion to protect the anonymity of the victim, K.S. See Rule 52, Ala. R.App. P.

. Testimony at trial indicates that K.S.’s birthday is December 28, 2006, and that Campos's birthday is February 1, 1979.

. Although Campos did not argue during his sentencing hearing that the trial court could not apply the enhancement—in fact, he was under the belief that the trial court had no alternative but to apply the enhancement— Campos preserved this argument for appellate review by raising it in his motion to reconsider his sentence. See Lightfoot v. State, 152 So.3d 434 (Ala.Crim.App.2012), reversed on other grounds by Ex parte Lightfoot, 152 So.3d 445 (Ala.2013).

. Other jurisdictions have also reviewed Ap-prendi claims under a harmless-error standard. See, e.g., Galindez v. State, 955 So.2d 517 (Fla.2007); United States v. Zepeda-Martinez, 470 F.3d 909 (9th Cir.2006); United States v. Nealy, 232 F.3d 825 (11th Cir.2000); United States v. Matthews, 312 F.3d 652 (5th Cir.2002); United States v. Strickland, 245 F.3d 368 (4th Cir,); State v. Ardoin, 58 So.3d 1025 (La.Ct.App.2011). We also note that the Alabama Supreme Court’s ruling in Lightfoot v. State, 152 So.3d 445 (Ala.2013), does not affect the harmless-error analysis set forth in Neder and Recuenco. In Lightfoot, the Alabama Supreme Court held that the Apprendi error was not harmless simply because the defendant had been sentenced within the statutory range. The Court, in finding that the error was not harmless in that case, made it clear that it was not establishing a rule that the harmless-error analysis could never apply to Apprendi error. Recognizing that the United States Supreme Court held in Recuenco that harmless-error analysis does apply to Ap-prendi sentencing error, the Court stated that it was determining that the error was not harmless in that particular case.