In its petition for writ of certiorari, the State asks this Court to review the judgment of the Court of Criminal Appeals,391 So.2d 1049, in reversing the first degree murder conviction of the defendant, Herbert Stockard. In support of its petition, the State makes two basic contentions:
(1) The Court of Criminal Appeals erred in holding that statements made by the victim in an extrajudicial conversation held outside the presence of the defendant were inadmissible because: the statements were made in a conversation which was a part of the res gestae, and, the portion of the conversation was first introduced by the defendant; therefore, the State could introduce the whole of it.
(2) The Court of Criminal Appeals erred in holding that the trial court incorrectly charged the jury:
 "If any witness testifying has been impeached, then the jury may disregard his testimony, unless his testimony is corroborated *Page 1062 
by other testimony [which is] not so impeached."
We have considered the arguments presented by the State, and by the defendant, and we conclude that the decision of the Court of Criminal Appeals is due to be reversed and remanded for the reasons which we will set out in this opinion.
The opinion of the Court of Criminal Appeals sets out substantially all of the evidence surrounding the extrajudicial statements of the victim which that court held was inadmissible. We do not set it out again; for a better understanding of the issues, we do point out that the extrajudicial conversation was first mentioned while the victim's daughter was being examined by the State. The victim's daughter, by an unresponsive answer, first introduced the statement her mother had made:
"Q. Were you drinking that day?
"A. No, sir.
"Q. Night?
"A. No, sir. I sure wasn't.
 She [Mrs. Stockard] came in and that is when she said if anything happened to her to tell the police who she was with and I told her nothing was going to happen to her. . . .
 "MR. TWEEDY: I move to exclude that. That is not something in the presence and hearing of the defendant.
"COURT: Granted.
 "MR. TWEEDY: I ask the Court to instruct the jury to disregard . . .
 "COURT: Jury disregard the last statement of the witness."
At that time, as the Court of Criminal Appeals correctly points out, the unresponsive answer was excluded by the court and the jury was instructed not to consider it.
Defendant's counsel, on cross-examination, went back into the matter and asked the witness specifically about the conversation she had with her mother:
 "Q. You said you talked Bev into going back with him that night?
"A. She . . .
 "Q. I believe you told the District Attorney a while ago that . . .
 "A. She told me she was afraid he was going to hurt her and we had been talking that day and . . .
 "Q. All right. What I'm asking is you said she told you she thought Herbert was going to hurt her and you told her to go on back with Herbert, didn't you?
 "A. Yes, I told her to go ahead that he probably wouldn't hurt her.
 "MR. BAKER: I would like to bring it to the Court's attention that this is hearsay testimony that we haven't been allowed to go into heretofore and since this comes from defense counsel the state intends now to explore that on redirect.
 "MR. TWEEDY: Your Honor, this was brought out by the State and she testified on direct examination and the State brought this out that she talked Bev into going back with him on that night. She so testified on direct examination when Mr. Baker asked her.
 "MR. BAKER: I just want to point that to the Court on redirect.
 "MR. TWEEDY: I point out to the Court also that I did not go into this myself, first. He started into the matter himself.
 "Q. Now, when you told her to go on back with him did you call the law?
"A. No, sir. She went to the truck . . .
"Q. I'm just asking . . . Did you call the law?
"A. No, sir.
 "Q. Did you make any effort to get anybody up that way to stop them?
"A. No, sir."
The Court of Criminal Appeals held:
 "We are convinced that the trial court, in its commendable effort to obtain the correct answer to the profusely argued question as to which party first injected evidence as to a conversation between the victim's daughter and the victim quite understandably came to an incorrect conclusion to the effect that it was first injected by defendant's counsel. It seems to us that it was first injected by the irresponsive answer of the witness to a question asked her on direct examination by the State. For this, neither the defendant nor his counsel was responsible. *Page 1063 
 "In addition, we are not persuaded that even if, under all the circumstances, defendant's attorney had first asked the witness some question pertaining to a conversation between her and her mother, out of the presence of defendant, such action would have opened the door to the introduction by the State of everything said by the victim during such conversation. The testimony of the witness as to what the mother said to her would on its face have been hearsay, but some of that which was said, or that could have been said by the mother, could have well been under one or more of the many exceptions to the hearsay rule of exclusion. The admissibility in evidence of anything said by the victim that came within any exception to the hearsay rule of exclusion, where shown by one party, would not entitle the other party to introduce evidence of what the victim said, out of the presence of the defendant, that would not come within an exception to the hearsay rule.
 "The most damaging part of the testimony of the witness as to what her mother told her was that part of her answer quoted above, in which she said, `She hugged my neck and told me if anything happened to her to be sure and tell the police who she left with.' Neither that statement nor substantially the same statement of the victim as shown in the testimony of the witness for the first time on the subject, which was excluded from the consideration of the jury on motion of defendant, falls within any exception to the hearsay rule. We do not agree with the position taken by appellee, that `It was part of the res gestae, or part of the events leading up to the killing.' In support of its position it cites Martin v. State, 77 Ala. 1 (1884) and Harris v. State, 96 Ala. 24, 11 So. 255 (1892). In each case, the trial court was upheld for admitting in evidence the statement of the victim of an alleged homicide as he was leaving on his last journey before he was killed. A similar conclusion was reached in Thornton v. State, 253 Ala. 444, 45 So.2d 298 (1950) holding that the statement was admissible as a part of the `res gestae of the act being performed or immediately contemplated by the declarant, the act of beginning or contemplating the trip or journey.' Before proceeding further, we should invite attention to the confusion that has been noted by use of the term `res gestae' in designating an exception to the rule against hearsay. Illinois Central R.R. v. Lowery, 184 Ala. 443, 63 So. 952 (1913); 6 Wigmore, Evidence, § 1745 (Chadbourn rev. 1976); Gamble,
McElroy's Alabama Evidence, § 265.01 (1) (1977)."
As we read the court's opinion, we think the court held that the defendant did not first inject the conversation into evidence. We cannot agree with this finding. That court is correct in stating that it was "first injected by the irresponsive answer of the witness." The distinguished judges of that court apparently thought it irrelevant that the defendant's counsel, after getting the trial court to exclude the unresponsive answer, asked the witness about the very same conversation, after being warned by counsel for the State that he was opening the door for the introduction of the other portions of the conversation. Based solely upon the testimony excerpted by the Court of Criminal Appeals and included in its opinion, we determine that defendant's counsel, not the State, injected the extrajudicial conversation into evidence.
The Court of Criminal Appeals apparently aware that there could be a colorable question as to which party injected the conversation into evidence, stated that even if the defendant first injected the conversation into evidence, the result was the same because:
 ". . . The admissibility in evidence of anything said by the victim that came within any exception to the hearsay rule of exclusion, where shown by one party, would not entitle the other party to introduce evidence of what the victim said, out of the presence of the defendant, that would not come within an exception to the hearsay rule." *Page 1064 
We conclude that this holding by the Court of Criminal Appeals is in conflict with this Court's opinion in Logan v.State, 291 Ala. 497, 282 So.2d 898 (1973), wherein it was stated:
 ". . . [W]hen part of a conversation or transaction is put in evidence, the opposite party may rightfully call for the whole of it, although the evidence was in the first place illegal. Gibson v. State, 91 Ala. 64, 9 So. 171. Further, it has been held that when the defendant, on cross-examination of a witness elicits part of a conversation, the State may in rebuttal show the entire conversation. Davis v. Stone, 131 Ala. 10, 31 So. 569; Flournoy v. State, 34 Ala. App. 23, 37 So.2d 218."
It appears to us that the Court of Criminal Appeals, in applying the rule that one party can show the entire conversation when the opposing party has introduced a portion of it, made a distinction between admissible and inadmissible hearsay. We do not think that Logan authorizes such a distinction. The rule of admissibility has been explained inMcElroy's Alabama Evidence as follows:
 "It is generally said, although sometimes loosely, that if one party proves any part of an oral conversation or oral statement, the other party has the right to prove all that was said on the same occasion [citing Logan v. State]. More correctly stated, the general rule is that only so much of the remainder of the statement or conversation is admissible as relates to the subject-matter of the part brought out by the opponent."
C. Gamble, McElroy's Alabama Evidence § 316.01 (1977). Thus, relevancy to the subject matter brought out is the standard by which a party might call for the remainder of a conversation partially proved by his opponent.
The opinion of the Court of Criminal Appeals conflicts with this Court's opinion in Logan v. State; we reverse and remand.
Even though we agree with the State's argument on the admissibility of the conversation, we reject the State's argument that the victim's conversation was also admissible under the res gestae exception to the hearsay rule. The Court of Criminal Appeals was correct in holding that the res gestae
exception was inapplicable.
With regard to the second issue raised by the State, we agree with the Court of Criminal Appeals that a distinction must be made between the testimony of a witness impeached by contradiction and the testimony of a witness shown to be unworthy of belief. In charging a jury concerning the appropriate treatment of these distinct types of testimony, it is incumbent upon the trial court to give significantly different instructions. When a witness has willfully sworn falsely and is, therefore, shown to be unworthy of belief, the jury is entitled to disregard his entire testimony and may be so charged. Jordan v. State, 81 Ala. 20, 1 So. 577 (1886). By way of comparison, however, when a witness is merely impeached by contradiction, the jury may disregard only such portions of his testimony as are controverted and otherwise uncorroborated by other credible and unimpeached witnesses. Recognizing these distinctions in treatment, we raise the question as to which type of charge, if either, was appropriate in the present case.
It is clear from the record that there was never any witness shown to have willfully sworn falsely; however, the defendant was contradicted by his mother, who testified to the effect that the defendant came by her house before taking his wife to the hospital. The defendant had testified earlier that when he realized his wife was injured, he drove her straight to the hospital. In view of this contradiction, the state duly requested that the jury be charged concerning the proper treatment of the testimony of an impeached witness. The charge which was given was a proper evidentiary charge, and its usage in this case did not constitute prejudicial error.
The Court of Criminal Appeals expressed its deep concern over the giving of the charge in the present case because it believed the jury may have relied upon it as a *Page 1065 
license for disregarding everything the defendant said. Since the defendant was the only witness called in his behalf, the court believed this would be tantamount to destroying his only defense. We disagree. When a defendant decides to testify, his testimony is subject to the same scrutiny and rules of evidence as the testimony of any other witness. In the present case, the defendant was impeached, and the jury was thus entitled to treat his testimony as it would the testimony of any other impeached witness.
The fallacy of the holding by the Court of Criminal Appeals becomes clear when one studies the longstanding rule set out in the case of Jordan v. State, supra. In that case, the jury was instructed concerning the possible willful and corrupt false swearing of three witnesses, with the defendant being specifically named in the charge. Notwithstanding the fact that the jury was instructed that it might disregard the defendant's entire testimony, the charge was upheld as a correct statement of the law and fully proper. At 81 Ala. 31-32, 1 So. 585, the Court held:
 ". . . The present charge is based on the willful and corrupt false swearing of the witnesses. In such case there is no error in instructing the jury that they may disregard their evidence. If the defendants apprehended that the jury might consider the instruction as imperative, or if the testimony of the witnesses was corroborated by other unexceptionable evidence, they could have limited the effect and operation of the maxim by an explanatory charge."
We recognize that the charge in Jordan was one dealing with false swearing; however, the principle of that case is applicable here. The oral charge involved in the present case is much less specific than that used in Jordan in that it addressed the impeachment of "any witness."
The giving of the instruction was not prejudicial in light of the underlying facts. If the defendant felt the charge was confusing or left the impression that the jury was required to disregard his entire testimony, he should have filed a proper request for an explanatory charge. Having failed to do so, he cannot now claim that the charge was improper.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
BLOODWORTH, J., not sitting.