MURDOCK, Justice.
Thomas Chester Ray, Jr., was convicted of first-degree sexual abuse, a violation of Ala.Code 1975, § 13A-6-66(a)(l), for an offense involving a child. The trial court sentenced Ray to 10 years’ imprisonment. On appeal, the Court of Criminal Appeals affirmed Ray’s conviction and sentence. Ray v. State, 52 So.3d 547 (Ala.Crim.App. 2007). This Court granted Ray’s petition for a writ of certiorari. The issue before us is whether the trial court erred in admitting evidence relating to a prior juvenile adjudication in Ohio in which Ray pleaded guilty to an offense involving sexual contact with a child.
The alleged victim in the present case was 16 years old at the time of the trial and approximately 9 to 11 years old at the time of the alleged incidents made the basis of the criminal charge. She was described at trial as mentally retarded, but the record also contains testimony that she was in the 10th grade at the time of the trial, that she was on the honor roll, and that she was involved in several extracurricular activities. There was testimony at the trial that the victim and her siblings were removed from their mother’s custody by the Alabama Department of Human Resources (“DHR”) in 2003 and were placed with the wife of Ray’s brother (“the guardian”).
The two incidents of alleged sexual abuse apparently occurred sometime between 1998 and 2000 while Ray was living with the victim’s mother (to whom Ray was then married), the victim, and her siblings, one of whom was the victim’s twin sister. The victim testified that, on two occasions, Ray made her rub his “privates.” She also testified that Ray told her not to tell anyone or he would beat her. The victim testified that, to her knowledge, no similar incident occurred with her twin sister.
The guardian testified that the victim told her about the alleged abuse in “the latter part of 2003.” The guardian immediately informed DHR of the allegation. During the ensuing investigation, Ray was interviewed by the local police, and he stated that he had never touched the victim in a sexual way.[1] The investigating detective also asked Ray about a previous juvenile adjudication that occurred in Ohio in 1991, when Ray was 16 years old. Ray admitted that he pleaded guilty in an Ohio juvenile proceeding to a charge of attempted rape of his then eight-year-old niece. As part of the Ohio adjudication, Ray completed a treatment program for sex offenders. During his interview with the local police, Ray gave a handwritten statement that reads as follows: “The things been *557 said about me been [sic] sexual with [the victim] are not true. I have never touched her or let her touch me in a sexual way.”
Before the start of the trial, Ray filed a motion in limine to bar any reference to the juvenile proceeding in Ohio. The trial court directed the State not to refer to that proceeding, and the State made no mention of it or the events relating to it in its case-in-chief.
Ray testified in his own defense and was questioned on direct examination about the written statement he gave to the local police. Ray testified as follows:
“Q. Did you have occasion to make a written statement to ... law enforcement?
“A. Yes, I did.
“Q. And in essence, what did you say? “A. It basically said I have never touched the girl in a sexual way the whole time I’ve known her.
“Q. And I’m going to ask you one more time, did you touch [the victim] in an inappropriate way?
“A. Never.
“Q. At any time?
“A. Never.”
(Emphasis added.)
During the State’s cross-examination of Ray, the following colloquy took place:
“Q.[W]hat you wrote out for your statement basically you said none of what had been said was true, is that right?
“A. Exactly.
“Q. You never touched her or let her touch you in a sexual way, is that correct?
“A. That is correct.
“Q. Just wouldn’t do something like that would you?
“A. Is that a question?
“Q. Yes, it is.
“A. No. No.
“Q. And your family members and friends, you’ve indicated don’t have a problem -with you being around their children?
“A. No.
“Q. What about back up in Cleveland?
“A. No, they haven’t.
“Q. Does anybody there have a problem with you being around their kids?
“A. Sure don’t.”
(Emphasis added.)
After the foregoing colloquy, Ray’s counsel renewed, outside the presence of the jury, Ray’s motion in limine to exclude any reference to the Ohio juvenile proceeding, and she objected to any inquiry as to “incidents that happened while the defendant was a juvenile.” Those objections were overruled, based primarily on the trial court’s mistaken recollection that Ray had “freely responded] that he wouldn’t do something like that.” In doing so, the trial court stated:
“[T]he court was of the opinion that I would not let her go into any of the other details of the statement. But when he freely responds that he wouldn’t do something like that, I think the defendant has placed himself in a position that the state’s got to be able to respond when they do, in fact done something like this and as a result has undergone treatment for it.
“If he would have just responded ‘no, ’ that would have been the end of it and we would be in the same position that we were in before we started but his response wasn’t just, ‘no, ’ he added the statement and I wrote it down in quota *558 tion marks that he wouldn’t do something like that.”
(Emphasis added.)[2]
The trial court then allowed the prosecutor to ask Ray on cross-examination before the jury about the oral statement Ray made to the police at the same time he gave the written statement:
“Q. And during the course of your conversation with [the detective] ... isn’t it time that you admitted that there was a prior occasion when you were in Ohio wherein you had sexual contact with a niece who was 8 years old at the time for which you underwent sex offender treatment, is that correct?
“A. Yes.”
In addition, in rebuttal, the State elicited testimony from the investigating detective to the effect that Ray, in his oral statement to the detective, had admitted that when he was a juvenile in Ohio, he had had sexual contact with his eight-year-old niece and had undergone sex-offender treatment. The detective’s testimony referred to the Ohio juvenile proceeding as well as to the events on which that proceeding was based.
In the Court of Criminal Appeals, Ray argued that the trial court erred in allowing the State to impeach him with evidence of his juvenile adjudication in Ohio because, he said, this evidence was barred by Rule 609(d), Ala. R. Evid., and by Ala.Code 1975, § 12-15-72(b). Rule 609(d) provides: “Evidence of juvenile or youthful offender adjudications is not admissible under this rule.”[3] Section 12 — 15— 72(b) provides, in part: “The disposition of a child [in a juvenile proceeding] and evidence given in a hearing in the court shall not be admissible as evidence against him in any case or proceeding in any other court whether before or after reaching majority. ...”
The Court of Criminal Appeals affirmed Ray’s conviction. In reliance on Stockard v. State, 391 So.2d 1060 (Ala.1980), the court concluded that the “completeness doctrine” allowed the State to introduce the aforesaid evidence:
“Here, by specifically testifying during direct examination about that portion of his statement in which he denied committing the offense, Ray opened the door to the introduction of the remaining portion of the statement in which he freely admitted that he had previously been charged with a prior juvenile offense involving sexual contact.”
52 So.3d at 551 (emphasis added).
Presiding Judge Baschab dissented. She noted that, with some limited exceptions, juvenile adjudications may not be used to impeach a defendant who testifies at trial. She concluded that the majority’s reliance on the completeness doctrine was misplaced because (1) that doctrine allows only the admission of the relevant remainder of an oral conversation or of a document introduced by the other party, i.e., it does not “allow[ ] carte blanche admissibility of the remaining portions of statements” and (2) Rule 609(d) and § 12-15-72 specifically limit the admission of evidence regarding juvenile adjudications. 52 So.3d at 554 (Baschab, P.J., dissenting).
*559 Ray argues to this Court (1) that Rule 609(d) and § 12-15-72 prohibited the admission of evidence relating to his 1991 juvenile adjudication in Ohio, and (2) that the “completeness doctrine” is limited to the relevant portion of the' remainder of the oral conversation at issue.
We conclude that the completeness doctrine does not support the admission of evidence regarding Ray’s 1991 juvenile adjudication in Ohio or the incident made the basis of that adjudication. In Stockard, this Court explained the doctrine as follows:
“The rule of admissibility has been explained in McElroy’s Alabama Evidence as follows:
“ ‘It is generally said, although sometimes loosely, that if one party proves any part of an oral conversation or oral statement, the other party has the right to prove all that was said on the same occasion [citing Logan v. State [, 291 Ala. 497, 282 So.2d 898 (1973) ]]. More correctly stated, the general rule is that only so much of the remainder of the statement or conversation is admissible as relates to the subject-matter of the part brought out by the opponent.’
“C. Gamble, McElroy’s Alabama Evidence § 316.01 (1977). Thus, relevancy to the subject matter brought out is the standard by which a party might call for the remainder of a conversation partially proved by his opponent.”
391 So.2d at 1064 (emphasis added).
Thus, the “relevancy” test under the completeness doctrine is, as Ray argues, a requirement that the part of the oral conversation or statement sought to be admitted under the doctrine “relates to the subject matter of the part [of the oral conversation or statement] brought out by the opponent.” It is not, in other words, a test of the general relevancy to the crime charged of the part of the conversation or statement sought to be admitted. See note 5, infra.
As also indicated by the Court’s explanation in Stockard, the completeness doctrine relates to oral conversations and statements. See also Rule 106, Ala. R. Evid., Advisory Committee Notes (explaining that in the wake of the adoption of Rule 106, the completeness doctrine continues to apply when “one party proves any part of an unrecorded oral conversation or oral statement”). On the other hand, Rule 106 now governs the necessity for completeness with respect to written statements.[4]
The present case does not present any issue under Rule 106. Although the first two questions and answers on direct examination quoted above did involve Ray’s describing a part of the written statement he had given to law enforcement, that fact avails the State nothing. The statement by Ray to the investigating detective regarding the Ohio incident was not included in Ray’s written statement.
Nor does the common-law completeness doctrine provide any basis for affirming the judgment of the trial court here. As noted, after being asked to describe his written statement, the following questions were put to Ray:
“Q. And I’m going to ask you one more time, did you touch [the victim] in an inappropriate way?
“A. Never.
“Q. At any time?
*560 “A. Never.”
(Emphasis added.) These questions did not solicit any testimony regarding any part of a prior oral conversation. They did not call on Ray to describe, and in response to them Ray did not describe, any part of his oral conversation with the detective. They are direct questions that were put to Ray at trial, and that he answered at trial, as to whether certain things were true.
Even if the completeness doctrine were apposite, Ray would still prevail on this issue. The completeness doctrine “serves the purpose of allowing a party to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary.” Ex parte Tucker, 474 So.2d 134, 135 (Ala.1985). The portion of Ray’s testimony during direct examination on the basis of which the State seeks to invoke the completeness doctrine consists of a bare denial of the crime in the present case. His testimony was not fragmentary or incomplete. The evidence of the 1991 Ohio incident does not “ ‘relate! ] to the subject matter’ ” of the part of Ray’s testimony “ ‘brought out by the [State’s] opponent.’ ” Stockard, 391 So.2d at 1064 (quoting C. Gamble, McElroy’s Alabama Evidence § 316.01 (1977)).[5]
In reaching our decision in this case, we also are cognizant of the dictates of § 12-15 — 72(b), which, as previously noted, provides in relevant part that “[t]he disposition of a child [in a juvenile proceeding] and evidence given in a hearing in the court shall not be admissible as evidence against him in any case or proceeding in any other court whether before or after reaching majority....” See also Rule 609(d); Ex parte McCorvey, 686 So.2d 425, 425 (Ala.1996) (holding that the trial court erred in permitting the State to impeach a defendant’s credibility as a witness by referring to the defendant’s probationary status as a youthful offender, noting the “‘long-standing policy of protecting the anonymity of juvenile offenders’ ”).
Finally, we reject the State’s argument to this Court that Ray “opened the door” to the admission of the contested evidence by his answers to the prosecutor’s questions on cross-examination. First, the prosecutor’s question as to whether Ray “just wouldn’t do something like that” is sufficiently ambiguous that it should not be read as soliciting a blanket denial of all past sexual misconduct (i.e., the question could reasonably have been understood to be about doing “something like that” to the victim in this case). More fundamentally, the State fails to explain how Ray’s answers could constitute “opening the door” when they were direct responses to questions asked by the prosecutor on cross-examination. In this regard, *561 we find instructive the opinion of this Court in Ex parte Woodall, 730 So.2d 652, 661-62 (Ala.1998):
“In its brief, the State attempts to justify the admission of ... evidence showing the defendant’s specific prior violent conduct, by emphasizing that the defendant testified on cross-examination that he was not violent and that he sought to avoid physical confrontations. These broad assertions, the State contends, opened the door to questions regarding his character and permitted evidence of the prior bad acts as impeachment. We disagree.
“ ‘Good or bad character of the accused is never an issue upon which the state may offer evidence to prove guilt unless the accused has first chosen to make it an issue.’ C. Gamble, McElroy’s Alabama Evidence, § 27.02(1) (5th ed.l996)(footnote omitted). ‘[T]he state cannot initiate the proving of the defendant’s bad character to prove his guilt. “In a criminal prosecution, it is generally agreed that the state is not allowed to introduce evidence of the accused’s bad character until the accused has first entered evidence of his good character.” ’ Dockery v. State, 659 So.2d 219, 220-21 (Ala.Cr.App.1994) (citation omitted). See also Ala. R. Evid. 404.
“The State’s argument in this case is identical to one rejected by the Court of Appeals of Georgia in a case with similar facts. In Arnold v. State, 193 Ga.App. 206, 387 S.E.2d 417 (1989), the prosecutor had on cross-examination asked the defendant three times whether he was a violent person. After the defendant responded by denying that he was violent, the prosecutor asked the defendant whether he had been convicted of aggravated assault. The defendant responded, ‘Yes[, but] that happened when I was young.’ 193 Ga.App. at 207, 387 S.E.2d at 418. On appeal, the defendant claimed that the prosecutor had improperly impeached his testimony and had attempted to show bad character. The prosecutor countered by contending that the questioning of the defendant regarding his prior conviction was permissible on the basis that the defendant had put his character in issue through his answers, given on cross-examination, indicating that he was not violent. The Court of Appeals rejected that argument and reversed the defendant’s conviction, stating:
“ ‘[T]he defendant did not voluntarily place his character in issue. He merely responded to questions which placed his character in issue.... This line of cross-examination was obviously an endeavor to compel defendant to respond to questions which placed his character in issue and which insured an excuse for the State’s introduction of evidence of defendant’s prior criminal record. We disapprove of this endeavor and adhere to the rule that the State cannot rebut or question the presumption of a defendant’s good character unless the defendant first chooses to place his character in issue.... [S]ince defendant did not voluntarily elect to place his character in issue, the trial court erred in allowing the State to attempt to impeach defendant and place his character in issue through the introduction of evidence of defendant’s prior criminal record.’
“193 Ga.App. at 207-08, 387 S.E.2d at 419 (emphasis original).
“We conclude that the reasoning of the Arnold court is persuasive here. The justification the State offered in this present case for the admission of the evidence of the defendant’s prior uncharged violent conduct, i.e., that his answers on cross-examination indicating that he was not violent opened the door *562 to questions regarding his character, is due to be rejected. It may not be said that the defendant chose to put his character at issue merely by responding to the prosecutor’s cross-examination designed to elicit testimony on that subject.”
(Footnote omitted.)
Based on the foregoing, we conclude that, in the context of the record before us, the evidence regarding Ray’s juvenile adjudication in Ohio and the incident made the basis of that adjudication was not admissible under the completeness doctrine and that the trial court erred in admitting that evidence.
REVERSED AND REMANDED.
LYONS, WOODALL, and PARKER, JJ., concur.
SMITH, J., concurs in the result.
STUART and BOLIN, JJ., dissent.
COBB, C.J., and SHAW, J.,* recuse themselves.

. Ray was not interviewed by the local police until July 2004.

. As demonstrated by the testimony quoted above, the trial court was mistaken in its recollection. Ray did not "freely respond” that he "wouldn't do something like that.” The State specifically asked him if he "[j]ust wouldn't do something like that would you?” Ray answered with a simple "no” and did not elaborate. The remaining questions in this vein were also answered with a mere denial, without elaboration.

. Rule 609 governs the impeachment of a witness by evidence of a criminal conviction.

. Rule 106 reads as follows:
"When a party introduces part of either a writing or recorded statement, an adverse party may require the introduction at that time of any other part of the writing or statement that ought in fairness to be considered contemporaneously with it.”

. “Relevance” in the context of the completeness doctrine does not mean relevance to the entire case; it is not an "evidentiary Trojan horse” that allows the State to bypass eviden-tiary rules prohibiting the admission of otherwise highly prejudicial evidence merely because that evidence was discussed during the same conversation as evidence that was admitted. The Wisconsin Supreme Court put it this way:
"The rule of completeness ... should not be viewed as an unbridled opportunity to open the door to otherwise inadmissible evidence. Under the rule of completeness the court has discretion to admit only those statements which are necessaiy to provide context and prevent distortion. The circuit court must closely scrutinize the proffered additional statements to avert abuse of the rule.... ‘[A]n out-of-court statement that is inconsistent with the declarant’s trial testimony does not carry with it, like some evidentiary Trojan Horse, the entire regiment of other out-of-court statements that might have been made contemporaneously.' ”
State v. Eugenio, 219 Wis.2d 391, 412, 579 N.W.2d 642, 651-52 (1998) (emphasis added).