IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 9, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0674

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JAQUAYLLA KESSLER,
Defendant Below, Petitioner

Appeal from the Circuit Court of Mingo County
The Honorable Miki Thompson, Judge
Criminal Action No. A20-F63

AFFIRMED

Submitted:  March 21, 2023
Filed:  June 9, 2023

Mark Hobbs, Esq.                                          Patrick Morrisey, Esq.
Chapmanville, West Virginia                    Attorney General
Petitioner's Counsel                                    William E. Longwell, Esq.
                                                                        Assistant Attorney General
                                                                        Charleston, West Virginia
                                                                        Respondent's Counsel

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WOOTON and JUSTICE HUTCHISON dissent and reserve the right to file
dissenting opinions.

SYLLABUS BY THE COURT

1.      "To satisfy the requirement to clearly show the specific and precise purpose for which evidence is offered under West Virginia Rule of Evidence 404(b), as set out in syllabus point 1 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), the proponent of the 404(b) evidence must not only identify the fact or issue to which the evidence is relevant, but must also plainly articulate how the 404(b) evidence is probative of that fact or issue. If the 404(b) evidence is determined to be admissible, then a limiting instruction shall be given at the time the evidence is offered, and must be repeated in the trial court's general charge to the jury at the conclusion of the evidence."  Syllabus Point 5, *State ex rel. Caton v. Sanders*, 215 W. Va. 755, 601 S.E.2d 75 (2004).

2.      "The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point.  Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence."  Syllabus Point 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3.      "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the

i

inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus Point 2, *State v. Adkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

WALKER, Chief Justice:

The victim of a horrific home invasion and robbery looked Petitioner Jaquaylla Kessler directly in the face during the crimes, identified her on the day of the crimes as a perpetrator, and unwaveringly reiterated that Petitioner committed the crimes. Police also found the victim's stolen items in Petitioner's home. At trial, the jury heard this evidence, believed the victim, and found Petitioner guilty. On appeal, Petitioner insists that the circuit court committed reversible error by admitting evidence of her prior criminal charge. We agree that the circuit court should have excluded the evidence. But given the significant weight of the other evidence establishing Petitioner's guilt, we are not left with grave doubt as to whether the inadmissible evidence substantially swayed the jury's verdict. So, the error proves harmless, and we affirm the circuit court's sentencing order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of June 16, 2020, Elizabeth Collins occupied her two-bedroom home in Williamson with her four-year-old daughter and five-year-old son. At approximately 1:00 a.m. on June 17 her so-called friend, Mandy Porter, arrived and joined Ms. Collins in her kitchen while her children slept. Shortly after Ms. Porter's arrival, a masked intruder dressed in all black entered the home, and Ms. Porter quickly exited. Ms. Collins was startled, grabbed her handgun from the top of a nearby cabinet, and pointed it at the intruder. The intruder lowered her mask, and Ms. Collins immediately recognized her as Heather Musick—someone she knew. Ms. Musick explained that she merely wanted to tell Ms. Collins something about Ms. Porter. But Ms. Collins ignored the phony

explanation and angrily demanded that Ms. Musick leave the home.  Ms. Musick complied, but on her way out, she threatened to return later with her girlfriend.

After things seemingly calmed down, Ms. Porter went back to Ms. Collins's home at approximately 4:00 a.m.  Believing she could trust her friend, Ms. Collins allowed Ms. Porter in again and locked the door behind her.  After a few minutes, Ms. Porter explained that she left her phone in her car and opened the front door, purportedly to retrieve it.  Ms. Musick, true to her promise, returned through the unlocked door with her girlfriend, Petitioner Jaquaylla Kessler.  Ms. Musick and Petitioner, each armed with handguns, bum-rushed Ms. Collins, beat her, and subdued her in her kitchen.  Meanwhile, Ms. Porter stole Ms. Collins's gold-colored Michael Kors wallet from the countertop and fled the scene.  Ms. Musick continued to beat Ms. Collins mercilessly while directing Petitioner to steal certain items from the home.  At some point during the encounter, Ms. Collins's distraught, four-year-old daughter entered the kitchen and begged the pair to stop hurting her mother.  When Ms. Collins briefly uncovered her face to look up at her daughter, Ms. Musick pistol-whipped her in the mouth and knocked several of her teeth out.  Petitioner then forcibly removed Ms. Collins's daughter from the room.  Before leaving, Ms. Musick shoved the barrel of her pistol down Ms. Collins's throat and warned her that she would kill her if she went to the police.

After Ms. Musick and Petitioner left the scene together, Ms. Collins summoned help from a neighbor who called 911.  Ms. Collins was taken by ambulance to

2

the hospital where she received treatment for her injuries. Later that day, she went to the Williamson Police Department to recount the incident to police officers. During the interview, she identified Ms. Musick and Petitioner as the two individuals who robbed and beat her. She also listed several items stolen from her home, including a Victoria's secret "Pink" bag containing $27,000,[1] several pairs of sunglasses still packaged for sale, a handgun with a pink and purple camouflage pattern on it, and a gold-colored Michael Kors wallet.

Based on the eyewitness account, police went to Ms. Musick's and Petitioner's shared home in Williamson to execute arrest warrants on them. Police found the pair at their home, and each executed a written consent for police to search it. Inside, police found the Victoria's Secret "Pink" bag, a pistol with a pink and purple camouflage pattern on it, $7,044.00 inside the pocket of a pair of sweatpants, several pairs of sunglasses packaged for sale, a turquoise Michael Kors purse, and a small change purse later identified as belonging to the victim's daughter.

On June 25, 2020, a grand jury indicted Petitioner for (1) First Degree Robbery, (2) Grand Larceny, (3) Burglary, (4) Conspiracy to Commit First Degree Robbery, (5) Conspiracy to Commit Grand Larceny, and (6) Conspiracy to Commit

---

[1] Ms. Collins testified that she acquired this money from a recent lawsuit settlement.

3

Burglary. The State also charged Ms. Musick with the same offenses but, for reasons not clear from the record, did not pursue charges against Ms. Porter for her involvement.

On March 29, 2021, Petitioner went to trial.[2] Ms. Collins testified that she recognized Ms. Musick and Petitioner as the perpetrators. She explained that she knew Ms. Musick personally and that she recognized Petitioner from photos on Ms. Musick's social media accounts. Ms. Collins said that before the robbery, she knew Petitioner was Ms. Musick's girlfriend and that Petitioner went by the nickname "Q." Ms. Collins emphasized that she "looked [Petitioner] right in her face in my house[]" on the night of the robbery, and Ms. Collins specifically identified Petitioner in court as one of the perpetrators. Ms. Collins clarified her belief that Ms. Porter had some involvement in the crime but that she did not directly participate in the beating. Ms. Collins also identified the items recovered from Petitioner's and Ms. Musick's home as those stolen from her. She explained that because she had been severely beaten shortly before listing the stolen items in the police report, she forgot to list the turquoise Michael Kors purse. But at trial, she identified the purse as hers and explained she stored the Victoria's Secret bag inside it.

Petitioner testified in her own defense. On direct examination, she denied knowing Ms. Collins and being at the scene of the robbery, and she claimed she generally avoided Ms. Porter. But Petitioner did not deny that the firearm and other items recovered

_____

[2] The circuit court conducted separate trials for Ms. Musick and Petitioner.

4

from her home belonged to the victim. Instead, she explained that Ms. Porter brought the firearm and the turquoise purse to her home. To explain the cash recovered by police, Petitioner offered bank records from the months preceding the robbery which showed that she withdrew $5,000 on May 7, 2020, and that Ms. Musick withdrew $3,356 on May 22, 2020.

On cross-examination, Petitioner confirmed she was Ms. Musick's only girlfriend at the time of the robbery. When the State inquired about Petitioner's testimony regarding Ms. Porter, the following exchange occurred:

Q. This business about Mandy Porter, you don't like to be associated with Mandy Porter. Why is that?

A. Because she gets into a lot of trouble; I don't want anything to do with her.

Q. What kind of trouble? What about her specifically do you not like to be associated with?

A. She's a liar. She's a thief.

Q. What about drug use?

A. She's a drug user.

The State seized upon Petitioner's answer about Ms. Porter's drug abuse as an opportunity to offer evidence of Petitioner's prior drug-related criminal charge. The State asked, "You and your girlfriend, Heather, pled guilty to felony drug charges before, too, didn't you?" Petitioner's counsel immediately objected to the question, and the circuit court conducted

5

a sidebar with the attorneys to discuss the objection. The State claimed it offered the evidence to impeach Petitioner and to show her motive and opportunity to commit the crimes against Ms. Collins. After taking a recess and going off the record to research the issue, the circuit court overruled the objection and admitted the prior act evidence under Rule 404(b) of the West Virginia Rules of Evidence to show Petitioner's motive, intent, and opportunity to commit the crimes. The circuit court instructed the State that when it presented the evidence to the jury to "tie it into motive, intent, opportunity. Be sure that's clear that it falls within one of the exceptions." When the jury returned, the State prompted Petitioner to admit that she had previously been charged with conspiracy to sell drugs with Ms. Musick. On redirect, Petitioner's counsel attempted to rehabilitate Petitioner's character through her testimony about her successful completion of drug court, the dismissal of the charge, and her sobriety since the charge.

The jury returned guilty verdicts on all counts of the indictment, and by order entered July 22, 2021, the circuit court sentenced Petitioner consecutively to a definite term of forty years of imprisonment for first degree robbery, one to ten years of imprisonment for grand larceny, one to fifteen years of imprisonment for burglary, and one to five years of imprisonment for each of the conspiracy convictions. As her sole assignment of error on appeal, Petitioner argues that the circuit court committed reversible error by admitting the testimonial evidence of her prior criminal charge.

## II. STANDARD OF REVIEW

We offer circuit courts wide-latitude on evidentiary rulings, and "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are reviewed for an abuse of discretion."[3] We do not necessarily reverse convictions when a circuit court erroneously admits evidence: "Even when a trial court has abused its discretion by admitting or excluding evidence, the conviction must be affirmed unless a defendant can meet his or her burden of demonstrating that substantial rights were affected by the error."[4] An evidentiary error affects a substantial right if the error "affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice."[5]

## III. ANALYSIS

Petitioner insists that the circuit court erred when it admitted the evidence of her prior criminal conspiracy charge because the State presented no evidence establishing how the charge related to her motive, intent, or opportunity to commit the crimes against Ms. Collins. Likewise, Petitioner complains that the State provided insufficient notice of its intent to offer prior bad act evidence, that the circuit court erred by not conducting an

---

[3] *State v. Blake*, 197 W. Va. 700, 705, 478 S.E.2d 550, 555 (1996) (citing *McDougal v. McCammon*, 193 W. Va. 229, 235, 455 S.E.2d 788, 794 (1995)).

[4] *Blake*, 197 W. Va. at 705, 478 S.E.2d at 555 (citing *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996)).

[5] *State v. Varlas*, 237 W. Va. 399, 406, 787 S.E.2d 670, 677 (2016) (quoting Syl. Pt. 9, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)).

*in camera* hearing to establish the evidence's admissibility, and that the circuit court erred by not giving the jury a limiting instruction as to the purpose for which it should consider the evidence. In response, the State raises no argument supporting the circuit court's reason or procedure for admitting the evidence. So, the State essentially concedes the error.[6] But the State insists any error "is of no moment because Petitioner was the person who occasioned the introduction of the evidence." In other words, the State argues, "Petitioner . . . opened the door to the discussion of her prior [criminal charge]." Alternatively, the State argues that we should deem any evidentiary error harmless, given the weight of the other evidence against Petitioner.

**A.** *McGinnis Requirements*

---

[6] The circuit court also erred when it introduced the evidence without the State first providing proper notice to Petitioner. West Virginia Rule of Evidence 404(b) provides, in relevant part, that prior notice must be given when a party intends to offer this type of evidence:

> (2) Permitted uses; notice required. — This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:
> (A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and
> (B) do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice.

Despite the State's decision not to address the circuit court's reasoning or the procedure below, we begin our analysis there.[7]  On its face, the circuit court's admission of Petitioner's prior conspiracy charge could fall within an exception to Rule 404(b)'s prohibition against prior bad act evidence—if the State did, in fact, connect it to her motive, intent, or opportunity to commit the underlying crimes.  As a general matter, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[8]  When the evidence is not offered as propensity evidence, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[9]

But, as we explained in *State v. McGinnis*, a circuit court must determine the admissibility of Rule 404(b) evidence as a preliminary matter under West Virginia Rule of Evidence 104(a) and may not admit it under Rule 104(b) contingent upon proof that has

---

[7] As a general rule, "[t]his Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred." Syl. Pt. 8, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991); *see also State v. Allah Jamaal W.*, 209 W. Va. 1, 4 n.6, 543 S.E.2d 282, 285 n.6 (2000) ("Mere confession of error by the State, of course, does not dictate the hand of this Court nor the outcome of this case." (internal quotations and citations omitted)).

[8] W. Va. R. Evid. 404(b)(1) (2014).

[9] *Id.* at (b)(2).

9

yet to be introduced.[10] Specifically, before admitting Rule 404(b) evidence, the circuit court should conduct an *in camera* hearing to determine whether (1) sufficient evidence supports a finding, by a preponderance of the evidence, that the prior crime, wrong, or act occurred, (2) the prior crime, wrong, or act is relevant to proving a use of the evidence permitted under Rule 404(b)(2), (3) the evidence is admissible under West Virginia Rule of Evidence 402, and (4) under West Virginia Rule of Evidence 403, the evidence's probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.[11] If after this inquiry the circuit court deems the evidence admissible, it shall instruct the jury on the limited purpose for which it may consider the evidence.[12] The circuit court must give the limiting instruction when the evidence is offered and when it gives the final jury instructions.[13]

---

[10] 193 W. Va. 147, 158, 455 S.E.2d 516, 527 (1994).

[11] *See id.* at 158-59, 455 S.E.2d at 527-28.

[12] *See id.* at 159, 455 S.E.2d at 528; *see also State ex rel. Caton v. Sanders*, 215 W. Va. 755, 762 n.7, 601 S.E.2d 75, 82 n.7 (2004) ("*McGinnis* recommended that a 404(b) instruction be given as part of the trial court's general charge to the jury. However, today, we make clear that such an instruction is mandatory.").

[13] *Id.*

To aid the circuit court's determination, the proponent of the Rule 404(b) evidence must plainly articulate how the evidence is probative of the permissible purpose for which it is offered:

> To satisfy the requirement to clearly show the specific and precise purpose for which evidence is offered under West Virginia Rule of Evidence 404(b), as set out in syllabus point 1 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), the proponent of the 404(b) evidence must not only identify the fact or issue to which the evidence is relevant, but must also plainly articulate how the 404(b) evidence is probative of that fact or issue. If the 404(b) evidence is determined to be admissible, then a limiting instruction shall be given at the time the evidence is offered, and must be repeated in the trial court's general charge to the jury at the conclusion of the evidence.[14]

In Petitioner's case, the circuit court directly contravened *McGinnis* when it admitted evidence of her prior criminal charge contingent upon the State's later introduction of proof linking it to her motive, intent, or opportunity to commit the offenses. Just as *McGinnis* sought to prevent, the State elicited testimony from Petitioner about the prior conspiracy charge and its surrounding circumstances, and once the State did so, it presented no evidence or explanation of the charge's relevance to any permissible use of it under Rule 404(b)(2). Indeed, based on the evidence in the record, we find no plausible way the State could have linked Petitioner's prior charge to her motive, opportunity, or intent to commit the crimes against the victim; the State presented no evidence that the crimes were drug-related or that the victim had any connection to the prior conspiracy.

---

[14] Syl. Pt. 5, *Sanders*, 215 W. Va. at 755, 601 S.E.2d at 75.

11

The circuit court could have avoided the issue if it made the necessary findings prior to admitting the evidence—as *McGinnis* requires.[15] And the circuit court compounded the error when it omitted the obligatory jury instructions explaining how the jury could consider the evidence. For these reasons, we find that the circuit court abused its discretion when it admitted Petitioner's prior criminal charge under Rule 404(b), and the State rightfully conceded the circuit court's error.

## B. *"Opening the Door"*

We now turn to the State's argument that Petitioner "opened the door" to the otherwise inadmissible evidence. The State did not raise this argument before the circuit court, so the issue has not been "refined, developed, and adjudicated by the trial court, so

---

[15] *See* Syl. Pt. 2, *McGinnis*, 193 W. Va. at 147, 455 S.E.2d at 516 ("Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.").

that we may have the benefit of its wisdom."[16]  Even so, we will address the State's

argument to dispel its apparent misconceptions.  A defendant may open the door to the

admission of otherwise inadmissible evidence when she first offers inadmissible evidence;

the State may cure the defect by offering comparative, but otherwise inadmissible,

evidence of its own:

> The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has "opened the door" by introducing similarly inadmissible evidence on the same point.  Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.[17]

---

[16] *State v. Salmons*, 203 W. Va. 561, 569, 509 S.E.2d 842, 850 (1998) ("[W]hen an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.") (quoting *Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993)).

[17] Syl. Pt. 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995); *but see State v. Potter*, 197 W. Va. 734, 749 n.24, 478 S.E.2d 742, 756 n.24 (1996) ("Technically, it is questionable whether curative admissibility is available to the State. The doctrine of curative admissibility allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similar inadmissible evidence on the same point. *See generally* 1 John Henry Wigmore, *Evidence in Trials at Common Law* § 15 (Peter Tillers rev.1983) (collecting cases from many jurisdictions). Normally, curative admissibility becomes important only when extrinsic rebuttal evidence is offered. If the contested evidence comes in as a result of cross-examination (intrinsically), its admissibility is determined by the scope of cross-examination. In any event the principles underlying both of these methods are the same.").

For Petitioner to have opened the door to the evidence of her prior charge, she had to first offer inadmissible evidence. She offered two statements about Ms. Porter that raise concerns about possibly inadmissible character evidence. First, Petitioner stated her opinion that "[Ms. Porter] is a liar. [Ms. Porter] is a thief." Second, Petitioner stated her belief that "[Ms. Porter is] a drug user." These statements raise concerns because under Rule 404(a), very limited circumstances permit a party to introduce reputation or opinion evidence about a person's character traits. Permissible uses of character evidence under Rule 404(a) include when a defendant offers a character trait about herself, when a defendant offers a character trait about a victim, or when the State offers evidence of a homicide victim's trait of peacefulness to rebut a defendant's self-defense argument.[18] As an additional exception to the rule, some courts permit a defendant to offer "other act" character evidence of an alternative suspect when the evidence, on its own or in combination with other evidence in the record, shows a nexus between the charged crime and the alleged alternative suspect.[19]

But, in this case we need not determine the admissibility of either of Petitioner's statements because, even if technically inadmissible, neither opened the door to the evidence of her prior conspiracy charge. Regarding Petitioner's opinion of Ms.

---

[18] *See* W. Va. R. Evid. 404(a)(2)(A)-(C).

[19] *State v. Zuccaro*, 239 W. Va. 128, 143, 799 S.E.2d 559, 574 (2017) (quoting *United States v. Jordan*, 485 F.3d 1214, 1219 (10th Cir. 2007)).

14

Porter as a liar and a thief, as we explained in *Guthrie*, evidence the State uses to rebut inadmissible evidence offered by a defendant "must be limited to the same evidentiary fact as the original inadmissible evidence." Here, the evidence of Petitioner's prior conspiracy charge exceeded the scope of her opinion of Ms. Porter as a liar and thief. So, Petitioner's statement did not open the door to the evidence. As to Petitioner's statement that Ms. Porter abused drugs, the State posed the question that injected the issue of drugs into the trial. The State may not ask questions designed to place a defendant's character at issue and then claim the defendant's responses opened the door to otherwise inadmissible evidence.[20] So, this statement did not open the door either.

## C.  *Harmless Error*

Because the circuit court abused its discretion when it admitted Petitioner's prior conspiracy charge and Petitioner did not open the door to the evidence, we turn to the State's argument that the error was harmless. We deem evidentiary errors harmless if,

---

[20] *See, e.g., ex parte Ray*, 52 So.3d 555, 561 (Ala. 2009) (quoting *Arnold v. State*, 387 S.E.2d 417, 419 (Ga. App. 1989) ("[T]he defendant did not voluntarily place his character in issue. He merely responded to questions which placed his character in issue . . . . This line of cross-examination was obviously an endeavor to compel defendant to respond to questions which placed his character in issue and which [e]nsured an excuse for the State's introduction of evidence of defendant's prior criminal record. We disapprove of this endeavor and adhere to the rule that the State cannot rebut or question the presumption of a defendant's good character unless the defendant first chooses to place his character in issue . . . . [S]ince defendant did not voluntarily elect to place his character in issue, the trial court erred in allowing the State to attempt to impeach defendant and place his character in issue through the introduction of evidence of defendant's prior criminal record.").

15

without the inadmissible evidence, the State presented sufficient evidence to support a conviction and the incompetent evidence did not prejudice the jury:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.[21]

So, evidence may present a danger of unfair prejudice when admitted but prove harmless in hindsight.[22]

To determine actual prejudice, "[o]ur cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict."[23] Stated differently, when addressing the effect of wrongfully admitted evidence, the three-part analysis asks "whether we can

---

[21] Syl. Pt. 2, *State v. Adkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

[22] *See*, *e.g.*, *State v. Blevins*, No. 12-0438, 2013 WL 3185064, at *5 (W. Va. June 24, 2013) (memorandum decision) ("Any prejudicial effect from this evidence was *de minimus* and did not result in an unfair trial."); *United States v. LaVictor*, 848 F.3d 428, 448 (6th Cir. 2017) ("Although there is an understanding that testimony concerning previous episodes of sexual assault can be particularly prejudicial to the jury, we believe that here, even if there was such an error, the error was harmless.").

[23] *Salmons*, 203 W. Va. at 582, 509 S.E.2d at 863 (quoting *State v. Potter*, 197 W. Va. 734, 748, 478 S.E.2d 742, 756 (1996)).

say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and the jury was not substantially swayed by the error."[24] Our review for harmless error is a fact-intensive inquiry.[25] We may deem the admission of 404(b) evidence mere harmless error if the government presents other convincing or overwhelming evidence of guilt.[26] As the Supreme Court of the United States has explained, there are practical reasons why harmless trial errors do not warrant reversal and a new trial:

> The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences . . . . These societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips

---

[24] *State v. Costello*, 245 W. Va. 19, 27, 857 S.E.2d 51, 59 (2021) (quoting *Guthrie*, 194 W. Va. at 684, 461 S.E.2d at 190).

[25] *Guthrie*, 194 W. Va. at 677, 461 S.E.2d at 183.

[26] *State v. Omechinski*, 196 W. Va. 41, 49, 468 S.E.2d 173, 181 (1996) ("[T]he error would be harmless because we are convinced that the defendant would still have been convicted in view of the overwhelming evidence of the his guilt."); *see also United States v. Layne*, 192 F.3d 556, 573 (1999) (citing *United States v. Copeland*, 51 F.3d 611, 615 (6th Cir.1995) ("When the government presents other convincing or overwhelming evidence, we may deem the admission of 404(b) evidence mere harmless error."); *see also United States v. Flores*, 640 F.3d 638, 643 (5th Cir. 2011) (quoting *United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008) ("When the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless.").

17

decidedly the other way when an error has had no effect on the outcome of the trial.[27]

We begin our review for harmless error by determining whether, excluding the evidence of Petitioner's prior conspiracy charge, the State presented sufficient evidence to support the guilty verdicts. In this case, on the day of the crime, the victim identified Petitioner as a perpetrator. And at trial, the victim explained that she knew of Petitioner before the incident, looked her directly in the face at the time of the incident, and had no doubt that she committed the crimes. The State also presented evidence showing that the police recovered the victim's stolen items in Petitioner's home. This evidence could convince a rational juror beyond a reasonable doubt that Petitioner committed the charged crimes. So, excluding the prior-act evidence, the State presented sufficient evidence to support the convictions.

Having determined the State presented sufficient competent evidence to support the convictions, we must determine whether the incompetent evidence prejudiced the jury's decision. As mentioned above, the victim unwaveringly testified about Petitioner's specific role in the crimes, including her beating the victim, following Ms. Musick's directions to steal designated items, and physically assaulting the victim's young daughter. The State focused its closing argument almost entirely on the victim's testimony about Petitioner's participation and did not mention her prior criminal charge. We find the

---

[27] *United States v. Mechanik*, 475 U.S. 66, 72 (1986).

eye-witness account and the corroborating evidence found in Petitioner's home highly compelling evidence of guilt, and we can say with fair assurance that the circuit court's error did not substantially sway the jury's verdict. Because of the overwhelming evidence establishing Petitioner's guilt, we have no doubt—much less "grave doubt"—as to whether the prior-act evidence substantially swayed the jury. So, the prior-act evidence, while inadmissible, had no prejudicial effect on the outcome of the case and does not warrant a new trial.

## IV. CONCLUSION

For these reasons, we affirm the circuit court's July 22, 2021 sentencing order.

Affirmed.